ACCEPTED
04-15-00272-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/21/2015 3:43:38 PM
KEITH HOTTLE
CLERK

No. 04-15-00272-CV

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/21/15 3:43:38 PM
KEITH E. HOTTLE
Clerk

KYU IM ROBINSON,
APPELLANT,

V.

JESS L. MAYFIELD, TRUSTEE, ET AL.,
APPELLEES.

ON APPEAL FROM THE 131ST JUDICIAL DISTRICT COURT
BEXAR COUNTY, TEXAS
HON. RENEE A. YANTA, PRESIDING JUDGE
TRIAL COURT CAUSE NO. 2013-CI-07766

## APPELLANT'S BRIEF

JoAnn Storey
State Bar No. 19315300
JOANN STOREY, P.C.
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713/529-0048
Telecopier: 713/529-2498
storeyj@heightslaw.com

*Counsel for appellant,*
*Kyu Im Robinson*

## ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:**              Kyu Im Robinson

**Appellate counsel:**     JoAnn Storey
State Bar No. 19315300
JOANN STOREY, P.C.
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713/529-0048
Facsimile: 713/529-2498
Email: storeyj@heightslaw.com

**Trial counsel:**          Steve Weakley
State Bar No. 20992300
LAW OFFICE OF STEVE WEAKLEY, P.C.
6338 North New Braunfels Avenue, No. 138
San Antonio, Texas 78209-3826
Telephone: 210/364-7406
Facsimile: 210/587-6537
Email: stevew@steaveweakleylawyer.com

JoAnn Storey
State Bar No. 19315300
JOANN STOREY, P.C.
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713/529-0048
Facsimile: 713/529-2498
Email: storeyj@heightslaw.com

**Appellee:**             William P. Riddick, Individually and as Trustee
of the Wm P. Riddick – 76 Trusts

**Trial and appellate counsel:** Gay Gueringer
State Bar No. 08571400
Katherine J. Walters
State Bar No. 00785174
RICHIE & GUERINGER, P.C.
112 East Pecan Street, Suite 1420
San Antonio, Texas 78205
Telephone: 210/220-1080
Facsimile: 210/220-1088
Email:ggueringer@rg-sanantonio.com
kwalters@rg-austin.com

**Defendant in the trial court:** Jess L. Mayfield

**Trial counsel for defendant:** Gay Gueringer
State Bar No. 08571400
Katherine J. Walters
State Bar No. 00785174
RICHIE & GUERINGER, P.C.
112 East Pecan Street, Suite 1420
San Antonio, Texas 78205
Telephone: 210/220-1080
Facsimile: 210/220-1088
Email:ggueringer@rg-sanantonio.com
kwalters@rg-austin.com

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Glossary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    The parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    The roadway in question. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The parties' controversy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The trial court proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.    The judgment awarding Riddick
an easement by estoppel must be reversed. . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    No easement was created when
Steves conveyed the Riddick property to Lifshutz. . . . . . . . . . . . . . 13

    B.    Alternatively, no easement by estoppel
was created at the time Lifshutz constructed his apartments. . . . . . . 15

C.     Any easement Steves purportedly created
may not be imposed against Robinson. . . . . . . . . . . . . . . . . . . . . . . 20

       1.     There is no evidence Lifshutz's successors
in interest continued to rely on any easement. . . . . . . . . . . . 21

       2.     There is no evidence Robinson had actual or constructive
notice of any purported easement on her property. . . . . . . . . 22

D.     No easement was created when Riddick purchased his property. . . 28

E.     No easement by estoppel was created
after Riddick purchased his property. . . . . . . . . . . . . . . . . . . . . . . . 30

       1.     No easement was created by whoever
owned the Robinson property before its sale to Atwell. . . . . 31

       2.     Atwell did not create any easement
during his ownership of the Robinson property. . . . . . . . . . . 31

       3.     No easement was created by Mr. or Mrs. Yi
during their ownership of the Robinson property. . . . . . . . . . 37

       4.     Robinson did not create any easement on the roadway. . . . . . 40

II.    The judgment alternatively granting Riddick
an easement by prescription must be reversed. . . . . . . . . . . . . . . . . . . . . 46

A.     Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

B.     Joint use of the roadway in this case
is fatal to a prescriptive easement. . . . . . . . . . . . . . . . . . . . . . . . . . 48

C.     There is no evidence of hostility. . . . . . . . . . . . . . . . . . . . . . . . . . . 49

D.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

III.   Riddick is not entitled to recover attorney's fees. . . . . . . . . . . . . . . . . . . 52

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

# INDEX OF AUTHORITIES

**Cases**                                                                           **Page**

*Allen v. Allen*,
     280 S.W.3d 366 (Tex.App.–Amarillo 2008, pet. denied) . . . . . 12, 13, 27, 50

*Anderson v. Tall Timbers Corporation*,
     378 S.W.2d 16 (Tex.1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barfield v. Howard M. Smith Company of Amarillo*,
     426 S.W.2d 834 (Tex.1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*BMC Software Belgium, N.V. v. Marchand*,
     83 S.W.3d 789 (Tex.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brooks v. Jones*,
     578 S.W.2d 669 (Tex.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 46, 47

*Callan v. Walters*,
     190 S.W. 829 (Tex.Civ.App.–
     Austin 1916, no writ) . . . . . . . . . . . . . . . . . . . . . . . 23, 32, 33, 37, 38, 40, 41

*Catalina v. Blasdel*,
     881 S.W.2d 295 (Tex.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Keller v. Wilson*,
     168 S.W.3d 802 (Tex.2005) . . . . . . . . . . . . . . . . . . . . . 10, 11, 17, 19, 32, 48

*Croucher v. Croucher*,
     660 S.W.2d 55 (Tex.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Drye v. Eagle Rock Ranch, Inc.*,
     364 S.W.2d 196 (Tex.1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

*Erwin v. Ferris*,
No. 12-10-00273-CV, 2011 WL 2638812
(Tex.App.–Tyler 2011, pet. denied) (mem. op.) . . . . . . . . . . . . 13, 35, 39, 43

*Estate of Trevino v. Melton*,
No. 04-07-00654-CV,
2009 WL 891881 (Tex.App.–
San Antonio 2009, pet. denied) (mem. op.) . . . . . . . . . 12, 13, 25, 46, 49, 50

*F. J. Harrison & Co. v. Boring & Kennard*,
44 Tex. 255 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ford Motor Co. v. Castillo*,
414 S.W.3d 616 (Tex.2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Foreman v. Whitty*,
392 S.W.3d 265 (Tex.App.–San Antonio 2012, no pet.) . . . . . . . . . . . . . . 17

*Gonzalez v. Ramirez*,
___ S.W.3d ___, No. 14-0107, 2015 WL 2148028 (Tex.May 8, 2015) . . . 17

*Grohman–Kahlig v. Kahlig*,
No. 04–07–00468–CV, 2008 WL 5377704
(Tex.App.–San Antonio 2008, no pet.) (mem. op.) (op. on rehg) . . . . . . . 54

*Harrington v. Dawson-Conway Ranch, Ltd.*,
372 S.W.3d 711 (Tex.App.–Eastland 2012, pet. denied) . . . . . . . . . . . . . . 49

*Herring v. Bocquet*,
933 S.W.2d 611 (Tex.App.–San Antonio 1996),
*rev'd on other grounds*, 972 S.W.2d 19 (Tex.1998) . . . . . . . . . . . . . . . . . . 53

*Holden v. Weidenfeller*,
929 S.W.2d 124 (Tex.App.–
San Antonio 1996, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . 13, 20, 21, 22

*In re A.H.*,
    414 S.W.3d 802 (Tex.App.–San Antonio 2013, no pet.) . . . . . . . . . . . . . . 51

*Ins. Co. of N. Am. v. Morris*,
    981 S.W.2d 667 (Tex.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 32, 38, 41

*Joske v. Irvine*,
    91 Tex. 574, 44 S.W. 1059 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kachina Pipeline Co., Inc. v. Lillis*,
    ___ S.W.3d ___, No. 13–0596,
    2015 WL 3653272 (Tex.June 15, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Kindred v. Con/Chem, Inc.*,
    650 S.W.2d 61 (Tex.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Koenig v. First Am. Title Ins. Co. of Texas*,
    209 S.W.3d 870 (Tex.App.–Houston [14th Dist.] 2006, no pet.) . . . . . . . . 24

*Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*,
    750 S.W.2d 868 (Tex.App.–Austin 1988, pet. denied) . . . . . . 13, 21, 28, 30

*Mack v. Landry*,
    22 S.W.3d 524 (Tex.App.–Houston [14th Dist.] 2000, no pet.) . . . . . . . . . 50

*Martin v. Cockrell*,
    335 S.W.3d 229 (Tex.App.–Amarillo 2010, no pet.) . . . . . . . . . . . 32, 37, 41

*Marcus Cable Assocs. v. Krohn*,
    90 S.W.3d 697 (Tex.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*McGonagle v. Stewart Title Guar. Co.*,
    432 S.W.3d 535 (Tex.App.–Dallas 2014, pet. denied) . . . . . . . . . . . . . . . 23

*O'Connor v. Gragg*,
    161 Tex. 273, 339 S.W.2d 878 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Othen v. Rosier*,

148 Tex. 485, 226 S.W.2d 622 (1950) . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

*Ramsey v. Champion*,
No. 10-12-00394-CV, 2014 WL 1882758
(Tex.App.–Waco 2014, pet. denied) (mem. op.) . . . . . . . . 15, 33, 34, 39, 42

*RDG Partnership v. Long*,
350 S.W.3d 262 (Tex.App.–San Antonio 2011, no pet.) . . . . . . . . . . . . . 47

*Roberson v. City of Austin*,
157 S.W.3d 130 (Tex.App.–Austin 2005, no pet.) . . . . . . . . . . . . . . . . . 53

*Sassman v. Collins*,
115 S.W. 337 (Tex.Civ.App.1908, writ ref'd) . . . . . . . . . . . . . . . . . . 47, 48

*SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*,
128 S.W.3d 304, 324 (Tex.App.–Dallas 2004, no pet.) . . . . . . . . . . . . . . 54

*Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mt. Ranch, Inc.*,
426 S.W.3d 800, 808 (Tex.App.–San Antonio 2014, pet. denied) . . . . . . . 50

*Scott v. Cannon*,
959 S.W.2d 712 (Tex.App.–Austin 1998, no pet.) . . . . . . . . . . . . . . . . . 34

*Smith v. Reid*,
No. 04-13-00550-CV,
2015 WL 3895465 (Tex.App.–
San Antonio June 24, 2015, no pet. h.) (mem. op) . . . . 10, 11, 34, 39, 42, 53

*Spence v. Fenchler*,
107 Tex. 443 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State v. Clear Channel Outdoor, Inc.*,
No. 01–11–00197–CV, 2012 WL 4465338 (Tex.App.–
Houston [1st Dist.] 2012), *rev'd on other grounds*,
No. 13-0053, 2015 WL 1870306 (Tex.April 24, 2015) . . . . . . . . . . . . . . 47

*Storms v. Tuck*,

579 S.W.2d 447 (Tex.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Texas W. Ry. Co. v. Wilson*,
    83 Tex. 153, 18 S.W. 325 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Total Clean, LLC v. Cox Smith Matthews Inc.*,
    330 S.W.3d 657 (Tex.App.−San Antonio 2010, pet. denied) . . . . . . . . . . . 51

*Tran v. Macha*,
    213 S.W.3d 913 (Tex.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50, 51

*Vrazel v. Skrabanek*,
    725 S.W.2d 709 (Tex.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Weber v. Chaney*,
    5 S.W.2d 213 (Tex.App.−San Antonio 1928, writ ref'd) . . . . . . . . . . . . . . 48

*Werchan v. Lakewood Estates Ass'n*,
    No. 03-08-00417-CV,
    2009 WL 2567937 (Tex.App.−Austin 2009, pet. denied) . . . . . . . . . . . . . 49

*Wilson v. McGuffin*,
    749 S.W.2d 606 (Tex.App.−
    Corpus Christi 1988, writ denied) . . . . . . . . . . . . . . . . . . . . . . . 33, 35, 38, 42

**Rules**

TEX.R.CIV.P. 329b(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

**Statutes**

TEX. CIV. PRAC. & REM.CODE § 16.021(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) . . . . . . . . . . . . . . . . . . . . . . . . 52

TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 . . . . . . . . . . . . . . . . . . . . . . . . . 52

**Other authority**

BASIC MANUAL OF TITLE INSURANCE,
    Section IV, P-3 (eff. January 3, 2014)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

No. 04-15-00272-CV

---

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO , TEXAS

---

KYU IM ROBINSON,
APPELLANTS,

v.

JESS L. MAYFIELD, TRUSTEE, ET AL.,
APPELLEES.

---

TO THE HONORABLE COURT OF APPEALS:

Appellant, Kyu Im Robinson (Robinson or appellant), files this brief seeking a reversal and rendition of the trial court's judgment in favor of William P. Riddick, Individually and as Trustee of the Wm P. Riddick – 76 Trusts (Riddick or appellee).

**GLOSSARY.**

The "apartments" are the Regency House Apartments located on the "Riddick Property" in the Bel Meade Addition, San Antonio, Texas. *See* FOF No. 1. The apartments were constructed in the late 1950s or early 1960s by the then owner of the Riddick property, B. (Bernard) Lee Lifshutz (Lifshutz). Ct.Ex.1(4RR) (Carter Lifshutz deposition, p.10). The apartments include 25 head-in parking spaces used by apartment tenants. 3RR36-37. Riddick owns the apartments. 3RR31-32.

The "concrete pad" is a slab Riddick constructed to support truck activity at the main garbage dumpster used for refuse from the apartments. 3RR39-40. As depicted at 01:53-01:56 of a video, DX32, the concrete pad extends into "the roadway."

The "Riddick property" consists of Lot 3 in the Bel Meade Addition and is owned by Riddick. DX9. Ownership of the Riddick property may be traced to Lifshutz, who acquired it on October 9, 1959, by deed from Albert Steves, III (Steves). DX3. The deed from Steves to Lifshutz does not contain any conveyance of an easement over and across the "Robinson property." *Id.* As shown in the plat below, DX6, the Riddick property (highlighted in yellow) has frontage on three roads: Burr Road, Raphail Drive, and Harry Wurzbach Road (formerly Military Highway). *See also* 2RR86.



The "roadway" is located on Robinson's property; Robinson has fee-simple title to the roadway. 2RR54. For about 50 years, the public, vendors and tenants of the apartments and of the shopping center, and Riddick and Robinson and their predecessors, have used the roadway. 2RR99, 102-03, 113, 170, 172; CT.EX.1(pp.14-16, 24); 3RR20, 90. The roadway is the only access to the 25 head-in parking spaces. 2RR168-69.

The "Robinson property," which includes Lot 7 in the Bel Meade Addition, is owned by Robinson. PX1; DX6; DX16. *See also* CR101(FOF No. 2). Robinson acquired the property on June 15, 1997, by Warranty Deed from Yong Bok Yi and his wife, Wha Seon Yi. PX1; DX16. The deed does not contain any exception for any easement benefitting Riddick's adjoining property. PX1; DX16. As shown in the plat below, DX6, the Robinson property (highlighted in yellow), adjoins the Riddick property:



The "shopping center" located on the Robinson property includes Robinson's business (Kim's Alterations), a barber shop, a martial arts center, and a restaurant called the Recovery Room and Sports Bar. 2RR80, 99-100. Robinson owns the shopping center. *See* CR101(FOF No.2).

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case*: | Robinson brought this suit against Riddick alleging Riddick was trespassing on Robinson's property and that Riddick did not have an easement to use the roadway on Robinson's property. CR25(¶3). Robinson sought a temporary and permanent injunction to prevent Riddick's continued trespass. *Id.*¶4. Robinson further sought a declaratory judgment that Riddick does not have an easement on her property and for attorney's fees. *Id.*¶¶5, 6. |
| | Riddick counterclaimed, seeking a declaratory judgment that he has an easement to use Robinson's property and for attorney's fees. CR13, CR18. |
| *Trial Court*: | Hon. Renee A. Yanta, judge presiding, 131st Judicial District Court, BexarCounty, Texas. |
| *Trial Court Disposition*: | The case was tried to the bench. The trial court rendered judgment denying Robinson the relief she sought. CR50; APPENDIX (TAB A). The judgment awards Riddick an easement by estoppel or, alternatively, an easement by prescription, on and over the roadway on Robinson's property. *Id.* The judgment further awards Riddick attorney's fees for trial and conditional attorney's fees for appeal. *Id.* The trial court filed Amended Findings of Fact (findings or FOF) and Conclusions of Law (conclusions or COL). CR101; APPENDIX (TAB B). |

**ISSUES PRESENTED**

-xvi-

1.      The evidence is legally insufficient to support an easement by estoppel on and over the roadway on Robinson's property.  *See* CR50; CR101(COL No. 6).

A.      No easement by estoppel was created on October 9, 1959, when Steves conveyed what is now known as the Riddick property to Lifshutz, because: (1) there is no evidence Steves said or did anything to induce Lifshutz to purchase the property; or (2) there is no evidence Lifshutz believed or relied on anything Steves said or did.  *See* CR101(COL No. 6).

B.      No easement by estoppel was created when, after Lifshutz purchased the property, he constructed, and completed construction of, the apartments on his property.  Any easement may only be created at the time of the grant of the dominant estate by the owner of the servient estate.  Alternatively: (1) there is no evidence Steves represented by silence or acquiescence that Lifshutz had an easement; or (2) there is no evidence Lifshutz believed or relied upon Steves' alleged representation.  *See* CR101(FOF Nos. 16-19; COL No. 6).

C.      Even if Steves created an easement by estoppel, the easement may not be imposed against Robinson because: (1) there is no evidence each of Lifshutz's successors in interest continued to rely on an easement to use the roadway; and (2) there is no evidence Robinson had actual or constructive notice of any easement.  *See* CR101(COL No. 6).

D. No easement by estoppel was created when Riddick purchased his property on January 31, 1977, because: (1) there is no evidence of any representation by the then owner of the Robinson property that Riddick had an easement on the roadway; or (2) there is no evidence Riddick believed or relied on any such representation in purchasing his property. *See* CR101(COL No. 6).

E. No easement by estoppel was created after Riddick purchased his property because an easement may only be created at the time of the grant of the dominant estate by the owner of the servient estate. Alternatively: (1) there is no evidence of any representation by any of the following persons that Riddick had an easement on the roadway; or (2) there is no evidence Riddick believed or relied on any representation by these persons:

1. The owner of the Robinson property from January 31, 1977 to October 30, 1981;

2. William W. Atwell or by Atwell Properties, Ltd (collectively, Atwell) (the owner of the Robinson property from October 30,1981 to December 28, 1992), *see* CR101(FOF Nos. 35, 36);

3. Yong Bok Yi and his wife, Wha Seon Yi (owners of the Robinson property from December 28, 1992 to June 15, 1997), *see* CR101(FOF Nos. 38, 39); or

4. Robinson, *see* CR101(FOF Nos. 47, 48, 52, 58, 59).

2. <u>Conditional issue:</u> The Court need address this issue only if it should "determine there is legally or factually insufficient evidence of any representation allowing Riddick to use the roadway the subject of this lawsuit under the theory of easement by estoppel[.]" CR50(¶h). Thus, if the Court should reverse the trial court's judgment granting Riddick an easement by estoppel for any other reason, the Court need not address this issue. *Id.* There is legally insufficient evidence to support an easement by prescription on the roadway. *See* CR101(FOF Nos.62-63; COL No.7).

3. The judgment awarding Riddick his attorney's fees must be reversed and judgment rendered that Riddick take nothing because attorney's fees are not recoverable under the Texas Declaratory Judgments Act in easement cases. Alternatively, if the court reverses the declaratory judgment in Riddick's favor, it may render judgment that Riddick is not entitled to any attorney's fees. Alternatively, the parties' claims for attorney's fees should be remanded for a new trial.

## STATEMENT OF FACTS

Unless otherwise indicated, the facts stated are undisputed.

### *The parties.*

Ms. Robinson was born in South Korea. 2RR80. When she came to the United States in 1976, she was married to a gentleman named Robinson, who was employed by the U. S. Army. *Id.* In 1991, Robinson moved to San Antonio. *Id.*

Robinson is a seamstress who owns her own business, Kim's Alterations. *Id.* She makes custom uniforms for the military, for which she has received awards. 2RR88-89; PX8-7. Reserve and active-duty service members from Austin and Houston come to Robinson for their uniforms. 2RR91.

In 1992, Robinson leased space from Mr. Bok Yi in the Bel Meade Center for her tailor shop. 2RR81. In that space, Robinson also had a pick-up station for dry cleaning. 2RR81-82. After Robinson acquired her own laundry and dry-cleaning equipment, she leased additional space from Mr. Yi. 2RR82.

During Robinson's tenancy, Mr. Yi approached Robinson with an offer for her to purchase the property. 2RR84. Mr. Yi indicated to Robinson that he had difficulty managing the property because he lived in Laredo and that he was impressed by Robinson's maintenance of her leased premises. *Id.* At the time, however, Robinson was a single mother and feared she could not afford the purchase. *Id.* But, with her brother's help, Robinson purchased Lots 7 and 8 in the Bel Meade Addition from Mr.

Yi and his wife, Wha Seon Yi (collectively, the Yis), on June 15, 1997. 2RR85; PX1; DX16.

Lot 7 of Robinson's property adjoins Riddick's property. 3RR17, 32; DX6, DX9. Riddick is a lawyer and a self-described "real estate title man." 3RR13, 18. As a lawyer, Riddick qualifies as a realtor and broker. 3RR28. Based on his substantial experience, Riddick was designated at trial as an expert in real-estate development. 3RR22-23. Because Riddick examined titles and was familiar with them, he and his brother started buying, and developing, single-family dwellings. 3RR15. When the Vietnam war began winding down, there were houses for sale on almost every block in San Antonio. 3RR16. Riddick acquired properties that were distressed or in poor condition and his brother and cousin would fix them up. *Id.*

### *The roadway in question.*

The roadway is located on Lot 7 of Robinson's property. PX7. There is no dispute Robinson has fee-simple title to the roadway. 2RR54. There also is no dispute that the public, as well as the current and prior owners of the adjoining properties, all used, and continue to use, the roadway. 2RR99, 102-03, 113, 170,172; CT.EX.1(pp.14-16, 24); 3RR20, 90.

Dr. Carter L. Lifshutz, Bernard Lifshutz's son, testified by deposition at trial to the earliest known use of the roadway. Dr. Lifshutz's father built Regency House

Apartments. CT.EX.1(p.10). Dr. Lifshutz did not know when his father constructed the apartments, but guessed it "could have been late '50s, early '60s." *Id.* In 1960, Dr. Lifshutz was five years of age. *Id.*p.9. Dr. Lifshutz's first memory of the roadway was after all the "hoopla" of the construction was over. *Id.*p.13. Dr. Lifshutz recalled that, as a kid - - from ages six to nine - - he and his cousins and the neighborhood kids would use the roadway to go to the convenience store located in the shopping center. *Id.*pp.13, 15.

Dr. Lifshutz testified that the roadway was used by both the apartments and by the shopping center. *Id.*p.24. He saw cars and delivery trucks, as well as traffic from the apartments, using the roadway. *Id.*pp.15-16, 26. He remembered seeing cars using the roadway to go from Harry Wurzbach to Burr Road and from Burr Road to Harry Wurzbach. *Id.*pp.25-26. The parking spaces were for the use of the apartment tenants, who used the roadway to access that parking. *Id.*p.26. Dr. Lifshutz was never told he was not supposed to use the roadway. *Id.*pp.23-24.

William H. Atwell was another witness who testified about the use of the roadway. Mr. Atwell was a limited partner in Atwell Properties, Ltd., a partnership that owned Lot 7. 2RR165; DX14. Atwell leased and managed that property for the majority of the time between 1981 and 1992. 2RR167. Between 1981 and 1992, the roadway was used by both the apartments and by the shopping center. 2RR168.

### *The parties' controversy.*

During the last 25 years, Robinson's business has grown. 2RR90. Robinson needs more space for her dry cleaning business and wants to move the operation out of her tailor shop because the steam damages the roof. 2RR97. She plans to improve the exterior of the building, replace the roof and the signage, and add more parking spaces. 2RR96-97. She has drawn up final plans depicting the changes she intends to make. 2RR95, 97-98; PX2. The sports bar restaurant also intends to increase the size of the wooden structure located near the roadway that the bar's customers use as a smoking area. 2RR99-100; PX8-19.

When Robinson's contemplated improvements are constructed, it will be necessary to install a temporary fence around the perimeter of Robinson's property. 2RR97, 117. On December 6, 2012, Robinson's husband pulled a fence permit and notified Riddick about the proposed installation of the fence. 2RR113, 139; PX5. At that time, Robinson's lawyer (Ramon) notified Riddick's lawyer (Bishop) of Robinson's intention to begin construction of the fence. DX22. In that letter, Ramon referred to the use of the roadway by both parties and by their tenants, suppliers, vendors, and the public. *Id.* Ramon offered to allow Riddick's tenants to use the roadway to access their parking spaces in exchange for a monthly payment of $3,500.00. *Id.*; 2RR140.

Ramon's letter to Bishop followed several others Ramon had written to Riddick on Robinson's behalf. On April 19, 2007, Ramon notified Riddick that the use of the roadway to access the apartments was without Robinson's permission and constituted a trespass. PX3. Ramon indicated Robinson was willing to negotiate to allow Riddick to lawfully use the roadway. *Id.* On July 12, 2007, Ramon sent a similar letter to the apartments' manager and, again, indicated that Robinson was willing to negotiate to allow the apartment tenants to lawfully use the roadway. PX4. On October 16, 2007, Ramon proposed an easement agreement with the apartments in exchange for a monthly payment of $1,000.00. DX21. Despite the letters, Riddick and the apartment tenants continued to use the roadway uninterrupted without changing what they had done previously. 2RR137; 3RR53. This lawsuit resulted. 2RR113.

In her lawsuit, Robinson alleged that, despite notice to Riddick, his attorneys, and his property manager, the apartment tenants continued to use Robinson's property without her permission. CR25(¶3). Robinson sought a temporary and permanent injunction to prevent Riddick's continued trespass. *Id.*¶4. Robinson further sought a declaratory judgment that Riddick does not have an easement on Robinson's property and for attorney's fees. *Id.*¶¶5, 6.

Riddick counterclaimed, asserting that the apartments' tenants, vendors, and service providers, as well as the public, have used the roadway since construction of

the apartments. CR30(¶17). Riddick sought a declaratory judgment that he has the following easements: (1) implied easement based on prior use; (2) implied easement by estoppel; and (3) easement by prescription. *Id.*¶¶23-28. Riddick also sought to enjoin Robinson from taking any actions that would prevent the use of the roadway by Riddick and other persons accessing the apartments. *Id.*¶38. Riddick further sought sanctions against Robinson on the ground that Robinson's claims had no basis in law or in fact. *Id.*¶¶31-32.

### *The trial court proceedings.*

The case was tried to the bench. The trial court's judgment denies Robinson's claims for injunctive and declaratory relief, for trespass, and for attorney's fees. CR50(¶¶a-d). The judgment denies Riddick's claim for easement by prior use or necessity and his claim for sanctions, but granted Riddick an easement by estoppel on the roadway, together with attorney's fees, post-judgment interest, and costs. *Id.*¶¶f, g, i-m. The judgment alternatively awards Riddick an easement by prescription on the roadway "[s]hould a reviewing court determine there is legally or factually insufficient evidence of any representation allowing Riddick to use the roadway" under an easement by estoppel. *Id.*¶h. The court determined the easement is coextensive with the legal description of a utility easement Albert Steves granted to the City of San Antonio in 1960. *Id.*¶g. *See also* DX4.

The court filed Findings of Fact and Conclusions of Law. CR63. Both parties timely filed requests for additional and/or amended findings and conclusions. CR72, 95. The trial court thereafter filed Amended Findings of Fact and Conclusions of Law. CR101. In response to Riddick's request, the court changed the legal description in the utility easement from "thirty-five" to "thirty" in FOF No. 20 and COL Nos. 6 and 7. CR95(¶1); CR101. In response to both parties' requests, the court amended FOF Nos. 34 and 36 to refer to "Atwell" instead of "they" and "their." CR72(¶19); CR98(¶3); CR101. Aside from those changes, the trial court did not amend or otherwise add to its findings or conclusions in response to the parties' requests. Robinson renewed her request for additional and amended findings and conclusions in her Second Request for Additional and Amended Findings of Fact and Conclusions of Law. CR110. The trial court did not make any other additional or amended findings or conclusions.

Robinson timely perfected her appeal from the trial court's judgment. CR133.

SUMMARY OF THE ARGUMENT

Mr. Riddick is a lawyer with a wealth of expertise as a "real estate title man." He was designated as an expert on real-estate development at trial. Despite his educational background and expertise, Mr. Riddick made a mistake he surely regrets. He purchased an apartment complex relying on his own mistaken belief that access to the apartments' head-in parking spaces was via a public roadway.

By the time Riddick and Robinson were embroiled in this litigation, Riddick likely was shocked to learn he had to prove something other than decades of public use of the roadway to be entitled to continue to use the roadway. But, that is all the record reflects. There is no evidence of any representation, by words or conduct, of an easement to use the roadway. Instead, Riddick based his case on the concept that, if there is a duty, a party can, by his or her silence or acquiescence, represent that another has an easement to use his or her property. Yet, Riddick never established that Robinson or her predecessors had a duty to tell Riddick he did not have an easement to use the roadway or, for that reason, he should not make any improvements on his property. There are a host of reasons neither Robinson or her predecessors owed Riddick a duty, not the least of which is that there was no vendor/vendee relationship between Riddick and Robinson and her predecessors.

Aside from Riddick's failure to establish duty, there is no evidence Riddick believed he had an easement to use the roadway. Instead, Riddick believed he could use the roadway because it was "a city street and it was being used as a city street." And, Riddick's own testimony is contrary to the notion that he relied on any silence or acquiescence by Robinson or her predecessors. Riddick maintained the roadway because of "damage caused by inclement weather and heavy truck use." He constructed the concrete pad underneath the main dumpster because, like the public,

he had "unfettered use" of the roadway and, also, to "eliminate the need for constant repair" of damage to the asphalt caused by Waste Management trucks.

The magnitude of Riddick's mistaken belief that he could use the roadway is reflected in his lament that the inability to continue to use the roadway would be "devastating to the value" of the apartment complex and "[y]ou couldn't operate it as an apartment complex." But, the law does not allow Riddick to transform his mistake into an easement by estoppel on Robinson's land because of sympathy for his situation. The doctrine of easement by estoppel is a creature of equity. It seeks to prevent injustice and to protect innocent parties from fraud. Because the record does not support an easement by estoppel, the trial court's judgment should be reversed.

The judgment alternatively declaring Riddick has an easement by prescription likewise has no support in the record. It is undisputed that the public, Riddick and his predecessors, and Robinson and her predecessors, have jointly used the roadway since about 1960. Under a century of Texas Supreme Court precedent, joint use is not exclusive and will not be considered adverse. There further is no evidence that Riddick's use of the roadway was hostile because, by Riddick's own admission, he never excluded Robinson or anyone else from using the roadway.

Lastly, Riddick is not entitled to recover his attorney's fees under the Texas Declaratory Judgments Act. Recovery of attorney's fees in easement cases under the TDJA is limited to those instances involving the construction of a written agreement.

Alternatively, if the Court reverses the trial court's declaratory judgment in Riddick's favor, then the judgment awarding Riddick his attorney's fees should be reversed and judgment rendered that Riddick take nothing. In the further alternative, the parties' claims for attorney's fees should be remanded to the trial court.

## STANDARD OF REVIEW

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and the Court reviews the legal and factual sufficiency of the evidence used to support them, just as it would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *4 (Tex.App.–San Antonio June 24, 2015, no pet. h.) (mem. op). In conducting a legal sufficiency review, the Court considers all of the evidence in the light most favorable to the verdict and indulges every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005); *Smith*, 2015 WL 3895465, at *4. In determining whether legally sufficient evidence supports the finding under review, the Court must consider evidence favorable to the finding if a reasonable fact finder could consider it, and disregard evidence contrary to the finding unless a reasonable factfinder could not disregard it. *City of Keller*, 802 S.W.3d at 827; *Smith*, 2015 WL 3895465, at *4.

When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support

the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Smith*, 2015 WL 3895465, at *4. The Court will sustain a legal-sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810; *Smith*, 2015 WL 3895465, at *4.

The Court reviews a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Smith*, 2015 WL 3895465, at *4. Although a trial court's conclusions of law may not be challenged for factual sufficiency, the Court may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *BMC Software*, 83 S.W.3d at 794; *Smith*, 2015 WL 3895465, at *4. If the Court determines that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *BMC Software*, 83 S.W.3d at 794; *Smith*, 2015 WL 3895465, at *4.

I. **The judgment awarding Riddick an easement by estoppel must be reversed.**

Generally, the grant of an easement must be made in writing and cannot be created by a parol agreement. *Anderson v. Tall Timbers Corporation*, 378 S.W.2d 16, 23 (Tex.1964). The equitable doctrine of easement by estoppel is an exception to the writing requirement. *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex.1979). Being a creature of equity, it seeks to prevent injustice and to protect innocent parties from fraud. *Id.* The grant of an easement by estoppel depends on the unique facts of each case. *Estate of Trevino v. Melton*, No. 04-07-00654-CV, 2009 WL 891881, at *7 (Tex.App.–San Antonio 2009, pet. denied) (mem. op.).

Application of the doctrine is "rare and nebulous" in circumstances other than those described by the Texas Supreme Court: (1) a dedication of a street, alley or square; (2) an owner selling land with reference to a map or plat; and (3) a seller of land who allows its purchaser to expend money on an alleged servient estate. *Storms*, 579 S.W.2d at 451; *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex.1962). The gravity of a judicial means of acquiring an interest in the land of another solely by parol requires equitable estoppel to be strictly applied. *Allen v. Allen*, 280 S.W.3d 366, 381 (Tex.App.–Amarillo 2008, pet. denied). Thus, an estoppel should be certain, precise and clear. *Id.*

There are three elements to an easement by estoppel: (1) a representation communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Storms*, 579 S.W.2d at 451-52; *Estate of Trevino*, 2009 WL 891881, at *7. The elements necessary to the creation of easement by estoppel apply at the time the communication creating the alleged easement is made. *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex.App.–San Antonio 1996, writ denied).

### A. No easement was created when Steves conveyed the Riddick property to Lifshutz.

To create an easement by estoppel, something must be said or done by the owner of the servient estate at the time of the grant of the dominant estate that induces the acceptance of the grant. *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 872 (Tex.App.–Austin 1988, pet. denied); *Allen*, 280 S.W.3d at 381; *Erwin v. Ferris*, No. 12-10-00273-CV, 2011 WL 2638812, at *7 (Tex.App.–Tyler 2011, pet. denied) (mem. op.). The tract of land on which the easement is imposed is the servient estate; the tract of land benefitted by the easement is the dominant estate. *Estate of Trevino*, 2009 WL 891881, at *2.

In this case, the dominant estate is the Riddick property. The grant of that property by the owner of the servient estate occurred on October 9, 1959, when Steves sold the property to Lifshutz. DX3. Both of those gentlemen are deceased. 2RR45;

-13-

CT.EX.1(p.8); DX11.  Because neither of them testified at trial, and no one testified on their behalf, there is no evidence Steves said or did anything that induced Lifshutz to accept the conveyance.[1/]  And, while Lifshutz's son testified by deposition at trial, he did not work in his father's development business and he had no specific knowledge of any agreements his father may have made with any of the landowners around the apartments.  CT.EX.1(Lifshutz Depo. p.24).

"The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal." *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d 834, 838 (Tex.1968). Here, Riddick adduced no evidence that, at the time of Steves' grant of the Riddick property to Lifshutz, Steves said or did something to induce Lifshutz's acceptance of the grant.  Accordingly, there is no evidence to support the trial court's determination that Riddick established an easement by estoppel on and through Robinson's property. *See* CR101(COL6).  For this reason alone, this Court should sustain Issue No. 1, reverse the judgment, and render judgment declaring that Riddick does not have an easement by estoppel.

---

[1/] The deed conveying the property reflects that Steves, individually, conveyed the property. DX3.  Accordingly, the conduct of Steves, individually - - as opposed to as the authorized representative of the owner, *see* CR101(FOF No.14) - - is at issue in determining whether an easement by estoppel was created at the time of Steves' conveyance of the property to Lifshutz.

**B.** **Alternatively, no easement by estoppel was created at the time Lifshutz constructed his apartments.**

Even if an easement may be created at some time other than at the time of the servient owner's conveyance of the dominant estate, no easement was created when Lifshutz thereafter constructed the apartments on his property. It was Riddick's theory at trial that, when Lifshutz built the apartments with their head-in parking spaces, Steves should have said to Lifshutz, "hold everything. What the heck are you doing because there's only one way in and one way out and that's through my roadway[.]" 3RR154-55. Riddick's theory is based on the concept that, if there is a duty to speak, a party by his or her silence or acquiescence represents that another has an easement to use his or her property. Riddick's theory has no support in the evidence or in the law.

Estoppel by silence arises "where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts." *Storms*, 579 S.W.2d at 452. There is no duty to speak "until the silent party is himself aware of the facts," or where the party asserting the easement has equal access to the facts, such as ownership of the property over which the easement is claimed. *Id.* at 452 & n.5; *Ramsey v. Champion*, No. 10-12-00394-CV, 2014 WL 1882758, at *4 (Tex.App.–Waco 2014, pet. denied) (mem. op.).

Riddick's theory crumbles in this case because there is no evidence the roadway existed when Lifshutz was constructing the apartments. Rather, Lifshutz's son provided the only evidence of the date of the inception of the roadway.[2] The son's first memory of the roadway was ***after*** all the "hoopla" of the construction of the apartments was over. CT.Ex.1(p.13).[3] The existence of the roadway after construction of the apartments is no evidence the roadway existed before or during construction or that Steves was aware of any roadway during Lifshutz's construction of the apartments. The Court should hold that there is no evidence Steves knew of any roadway while Lifshutz was constructing his apartments and, therefore, did not owe Lifshutz any duty.

Without evidence of a roadway in existence while Lifshutz was constructing his apartments, it is immaterial that drawings of the apartments purportedly showed "an absolute expectation that the roadway was going to be used for head-in parking." *See* 2RR45. Even regardless of their immateriality, the drawings are no evidence Steves owed any duty to Lifshutz to tell him to "hold everything."

As Riddick's attorney candidly admitted, it is unknown who designed the drawings:

---

[2] The Exhibit Index of the Reporter's Record refers to photos dated 1/16/54. VOL.4, p.7. The Court will note from inspection of the original exhibits filed on July 7, 2015, that the photos themselves bear no date. DX26A, DX26B, DX27.

[3] Accordingly, there is no evidence supporting the trial court's finding that the roadway was constructed sometime before January 1954. *See* CR101(FOF No.6).

We don't know who actually designed those drawings. Everybody is dead. Mr. Bernard Lifshutz is dead. Mr. Albert Steves is dead . . ..

2RR45.

Undaunted by this lack of evidence, the lawyer speculated that "one of the possibilities" was that Steves designed the drawings before selling the property to Lifshutz. *Id.* The "other possibility" was that maybe Lifshutz designed the drawings. *Id.* Neither possibility is evidence of who designed the drawings. *Cf. Gonzalez v. Ramirez*, ___ S.W.3d ___, No. 14-0107, 2015 WL 2148028, at *6 (Tex.May 8, 2015) ("the possibility of control is not evidence of a right of control actually retained or exercised.").

Nor may either possibility be inferred. "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *City of Keller*, 168 S.W.3d at 813. Riddick's suggestion that it is possible Steves designed the drawings before selling the property to Lifshutz is mere surmise or suspicion and is, therefore, no evidence. *See Foreman v. Whitty*, 392 S.W.3d 265, 274 (Tex.App.–San Antonio 2012, no pet.).

There further is no evidence when the drawings were prepared or when Lifshutz began construction of the apartments. The drawings reflect only that they were revised on November 3, 1959, 3RR59, which was after Lifshutz purchased the

property.[4] And, Lifshutz's son could not recall the date the apartments were constructed, but guessed it "could have been late '50s, early '60s." CT.EX.1(p.10).

Under this record, Steves had no duty to tell Lifshutz to "hold everything." In the absence of duty, the trial court's finding that Steves' silence and acquiescence constituted a representation that Lifshutz had an easement to use Steves' property, CR101(FOF No.17), does not, as a matter of law, give rise to an easement by estoppel. *Cf.*, *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex.1998) (in the absence of a duty to disclose, a failure to disclose does not constitute fraud).[5] This Court should sustain Issue No. 1, reverse the trial court's judgment, and render judgment declaring that Riddick does not have an easement by estoppel on the roadway.

Even if Steves had a duty to speak, there is no evidence Lifshutz believed or relied on Steves' silence or acquiescence in constructing, or in completing the construction of, the apartments. Because it is equally plausible that Lifshutz, himself,

---

[4] Accordingly, there is no evidence supporting the trial court's finding that the drawings were made prior to September 1959 and prior to Steves' conveyance of the property to Lifshutz. *See* CR101(FOF No.10).

[5] Because there is no evidence of any roadway existing when Lifshutz built his apartments, or of Steves' knowledge of the drawings, the following findings are immaterial: (1) the drawings designed an apartment complex in a manner that required the apartments and tenants to use the roadway; (2) the drawings reflect a design of the apartments that required the use of the roadway to access the head-in parking; (3) the apartments were designed with other characteristics requiring the use of the roadway for access; (4) Lifshutz constructed the apartments with the head-in parking essentially as designed; and (5) as shown on the drawings, it was necessary to use Steves' property to access the head-in parking. *See* CR101(FOF Nos.11-15); *Spence v. Fenchler*, 107 Tex. 443, 459 (1915) (findings of fact are immaterial where they were not responsive to any material issue in the case).

-18-

designed the drawings, he could not have believed the drawings constituted a representation by Steves that he (Lifshutz) had an easement over Steves' property to access the head-in parking, nor could he have relied on the drawings as a representation by Steves of any easement to use the roadway to access the head-in parking. This undisputed evidence establishes the opposite of the trial court's findings. *See* CR101(FOF Nos.18, 19); *see City of Keller*, 168 S.W.3d at 816 (there is "no evidence" when there is "conclusive evidence to the contrary").

Finally, it is significant that Lifshutz built the apartments on his own property. Easement by estoppel typically arises when "the seller allows the purchaser to expend money on the servient tract, as for example a drainage ditch across the grantor's land, or a house or other structure which encroaches on the land of the servient estate." *Drye*, 264 S.W.2d at 210. *See also Storms*, 579 S.W.2d at 453 n.7 (no estoppel to deny existence of alleged easement where owner of servient estate "mere[ly] acquiesce[s] in the making of improvements to the dominant estate").

Although the Court in *Drye* observed that estoppel cases are not limited to situations involving expenditure on the servient estate, "this group does form a large part of the cases affixing easements appurtenant by estoppel." *Drye*, 264 S.W.2d at 210. And, while this Court has upheld an easement by estoppel where the expenditure was made on the dominant estate, the Court was not presented with the issue of whether the doctrine may be extended to these instances. *See Holden v. Weidenfeller*,

929 S.W.2d at 132. This Court should hold that there is no easement by estoppel because Lifshutz constructed the apartments on his own property.

In conclusion, the evidence Riddick offered to prove easement by estoppel during Lifshutz's construction of the apartments is so weak it does "no more than create a mere surmise or suspicion of its existence . . . and, in legal effect, is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). The following caution from the Texas Supreme Court is especially fitting:

> "The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property . . . upon mere surmise or suspicion[.]"

*Joske v. Irvine*, 91 Tex. 574, 583, 44 S.W. 1059, 1063 (1898). The Court should sustain Issue No. 1, reverse the trial court's judgment, and render judgment declaring that Riddick does not have an easement by estoppel.

## C. Any easement Steves purportedly created may not be imposed against Robinson.

As discussed above, this Court should hold Steves did not create any easement when he sold the property to Lifshutz or, alternatively, when Lifshutz built his apartments. But, even if Steves induced Lifshutz to buy the Riddick property, or Steves owed a duty to tell Lifshutz to "hold everything" during Lifshutz's construction of his apartments, the easement may not be imposed against Robinson. There are only two instances where, once created, an easement by estoppel is binding on successors

-20-

in title: (1) if reliance upon the existence of the easement continues, *Holden*, 929 S.W.2d at 131; or (2) the subsequent purchaser has actual or constructive notice of the easement claimed. *Lakeside Launches*, 750 S.W.2d at 873. In this case, there is no evidence of either requirement necessary to impose an easement against Robinson.

### 1. There is no evidence Lifshutz's successors in interest continued to rely on any easement.

Lifshutz's successors in interest are as follows:

1. Skylark Investment Company (Skylark), by conveyance from B. Lee Lifshutz on January 3, 1966, DX5;

2. Walter G. Lagerguist, Jr. (Lagerguist), by conveyance from Skylark Investment Company on January 29, 1971, DX7; and

3. Riddick, who acquired his title from Lagerguist on January 31, 1977. DX9.

No representative from Skylark testified at trial, nor did Lagerguist testify, and no one testified on their behalf. Riddick did not testify to any communications with Skylark or Lagerquist. Consequently, there is no evidence Skylark or Lagerguist relied on the existence of any easement Steves purportedly created. Further, Riddick never testified he relied on any easement Steves granted to Lifshutz. On the contrary, and as discussed in greater detail below, Riddick himself admitted he purchased his property because it appeared to him the roadway was "a city street and it was being

used as a city street."  3RR20.  This Court should hold that, because there is no evidence of continued reliance by each of Lifshutz's successors on any easement Steves may have created, any such easement may not be imposed against Robinson. *See Holden*, 929 S.W.2d at 131.

> **2.    There is no evidence Robinson had actual or constructive notice of any purported easement on her property.**

When Robinson walked the property with her seller, Yong Bok Yi (Yi), nothing she saw put her on notice that Riddick had an easement on the roadway to access the head-in parking.  Instead, all she noticed was that "everybody" was using the roadway.  2RR99.  By that she meant the "apartment people" used the roadway to access the parking spaces, other people drove through, and her restaurant/sports bar tenant used the roadway to access the back door to its establishment.  *Id.*  Indeed, all of the testimony at trial established, without any contradiction, that the public, Riddick and his predecessors, and Robinson and her predecessors, jointly used the roadway on Robinson's property.  2RR99, 102-03, 113, 170, 172; Ct.Ex.1(pp.14-16, 24); 3RR20, 90.

The evidence conclusively establishes the contrary of notice because, when property is also used by owner of the property, the law presumes the use is by permission.  *Callan v. Walters*, 190 S.W. 829, 831-32 (Tex.Civ.App.–Austin 1916, no writ) ("use of a way over the land of another when the owner is also using the same

is not such adverse possession as will serve as notice of a claim of right, for the reason that the same is not inconsistent with a license from the owner."). And, because the law presumes the use is by permission, Robinson's testimony that she did not give Riddick express or implied permission, 2RR119, is immaterial.

It was Riddick's position at trial that two title commitments showed Robinson "was on notice that there was other use to her property and she could have secured title insurance, which would have cleared up ahead of time any issue that there might have been." 2RR130. Riddick based his argument on the "rights-of-parties-in-possession" provisions in the title commitments. DX17, DX18. Riddick's contention demonstrates a fundamental misunderstanding of title insurance and of the meaning of "rights of parties in possession" in title commitments.

Title insurance would not have put Robinson on notice of any purported easement on her property. A title insurance policy is a contract of indemnity that imposes a duty on the insurance company to indemnify the insured against losses caused by defects in title. *McGonagle v. Stewart Title Guar. Co.*, 432 S.W.3d 535, 540 (Tex.App.–Dallas 2014, pet. denied). An easement, on the other hand, is a non-possessory interest in land. *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex.2002). Importantly, there is no dispute in this case that Robinson had title to the roadway. 2RR54.

Similarly, the "rights-of-parties-in-possession" exception in the title commitments did not put Robinson on notice of an easement on her property. That exception relates to claims such as adverse possession. *Koenig v. First Am. Title Ins. Co. of Texas*, 209 S.W.3d 870, 874 (Tex.App.–Houston [14th Dist.] 2006, no pet.); *see also* BASIC MANUAL OF TITLE INSURANCE, Section IV, P-3 (eff. January 3, 2014) ("[T]he term "Rights of Parties in Possession" shall mean one or more persons who are themselves actually physically occupying the property or a portion thereof under a claim of right adverse to the record owner of the property . . ..").[6/]

For a party to be in possession of the property, the possession must be open, visible, unequivocal, exclusive, hostile, and actual rather than constructive. *Koenig*, 209 S.W.3d at 875. In this case, Riddick's "possession" of the roadway was not exclusive because, under a century of supreme court precedent, the roadway is used jointly by the public, by Riddick, and by Robinson. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex.1979) (when landowner and claimant of an easement both use the same way, use by the claimant is not exclusive of the owner's use). Nor was Riddick's possession hostile because, as Riddick himself conceded, he never attempted to exclude all other persons from using the roadway. 3RR88; *see Estate of Trevino*, 2009 WL 891881, at *4 (for possession to be hostile, the easement claimant must exclude, or attempt to exclude, all other persons, including the true owner, from using

---

[6/] Available at http://www.tdi.texas.gov/title/titlem4a.html.

the property). Finally, the notion that Riddick was in "possession" of the roadway is inconsistent with Riddick's claim throughout this case that he had an easement. As explained above, an easement is a non-possessory interest in property. *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d at 700.[7/]

Riddick also cross examined Robinson about her deposition testimony. Robinson said she did not remember testifying during her deposition that Mr. Yi pointed to the roadway, told her it was an easement, that it was "commercial," and she could not "do anything with it." 2RR149. To impeach Robinson, Riddick's counsel asked the following question:

> "[D]idn't you tell me at that deposition that [Yi] explained to you this is an easement, this one, on this side. This is commercial. He say I cannot do anything. He explained to me this one is an easement. People go through this way. Do you remember that testimony?"

2RR153. In response, Robinson's clarified what she meant in her deposition:

> Easement is other side, opposite side I'm talking. It's not apartment side, you know, the other side - - other side, either behind the line, the building, like the shop, the other side. We have two side. So [Yi] tell me about it at the other side, yes, the easement. You cannot do anything about it. I'm talking about the opposite side."

*Id.* This testimony does not support the trial court's finding that Robinson knew the roadway "had a commercial use and such use could not be changed." *See* CR101(FOF No.42).

---

[7/] Because Riddick was not in "possession" of the roadway as a matter of law, the trial court's finding to the contrary is not supported by the evidence. *See* CR101(FOF No.46).

Counsel also questioned Robinson concerning an exhibit discussed during her deposition:

Q.    And that's when you were telling me that this was private land?

A.    Yes.

Q.    And that Mr. Bok Yi said this one is commercial and you can't do anything on it; is that right?

A.    I don't remember he say you cannot do anything on it.  All he say is that this is private land.  You buying this piece of land.

2RR156; DX24.  This testimony similarly does not support the trial court's finding that Robinson knew the roadway "had a commercial use and such use could not be changed."  *See* CR101(FOF No.42).

On redirect, Robinson explained that she and Yi communicated in Korean and that, during her deposition, she testified to her translation of their discussion. 2RR158.  Robinson said she initially testified in her deposition that Yi used the Korean term "cain," which Robinson translated to mean "private easement."  *Id.*  She clarified later in her deposition that Yi used the term "cainta," which Robinson translated to mean "private land."  2RR159.  That meant to Robinson that Yi was telling her he had complete ownership.  *Id.*  This testimony is consistent with Robinson's explanation on cross examination at trial that, during her deposition, she confused the terms "easement" and "private land," and used them interchangeably. 2RR151.

-26-

Riddick further may take no comfort in Robinson's admission that, before purchasing the property, she did not ask Yi whether he had any "arrangements" with the apartments to use the roadway to access the parking. 2RR119. It is unknown from the record whether "arrangements" meant that Yi gave the apartments permission to use the roadway, whether Yi allowed the apartments to use the roadway because he wanted to be a good neighbor, or whether it meant that Yi gave the apartments an easement.

In sum, Robinson did not, as a matter of law, have notice of any easement on her property. Further, Riddick adduced no evidence Robinson had notice of any easement by virtue of her discussion with Mr. Yi. The gravity of a judicial means of acquiring an interest in a person's land, requires an estoppel to be certain, precise and clear. *Allen*, 280 S.W.3d at 381. But, as Riddick's own lawyer conceded, "the questions and answers weren't quite in sync" during Robinson's trial and deposition testimony. 2RR151-52. That is no excuse for failing to prove that Robinson had notice of an easement on her land. Consequently, even if Steves induced Lifshutz to buy the Riddick property, or induced Lifshutz to construct the apartments, the easement may not be imposed against Robinson. The Court should sustain Issue No. 1, reverse the judgment, and render judgment declaring that Riddick does not have an easement by estoppel on the roadway.

### D. No easement was created when Riddick purchased his property.

When Riddick purchased his property on January 31, 1977, the Robinson property was owned either by Steves or by Katharine Muir Steves, also known as Katherine Muir Steves, Individually and as Independent Executrix of the Estate of Albert Steves, III. DX9, DX11. Riddick testified he was the point person on the decision to acquire the apartments. 3RR16. Yet, he never testified he had any discussion with either Steves or with Steves' independent executrix. Consequently, there is no evidence that, at the time Riddick purchased his property, either of those persons induced Riddick's acceptance of the grant. *See Lakeside Launches, Inc.*, 750 S.W.2d at 872.

There further is no evidence that Riddick believed he had an easement on the roadway, or that he relied on any easement, in purchasing the property. As an expert in real-estate development, Riddick considers "location, location, location" when deciding whether to purchase real estate. 3RR24. With respect to Riddick's purchase of this property, he was primarily interested in knowing the occupancy rate. 3RR18. "Being a real estate title man," Riddick wanted to see if there was adequate parking, plumbing, and electrical - - "the whole business of apartments." *Id.* To determine parking was adequate, Riddick counted parking spaces. 3RR19.

Riddick's lawyer also asked Riddick how he determined there was access to the head-in parking and to provide his "understanding" about his "right" to use the roadway for that purpose. 3RR20. Riddick's answer reveals he relied solely on his

own observations, as opposed to something another person said or did or did not say or do:

> The public had access.  The tenants had access.

\* \* \*

> I had no hint as to a problem.  It was open.  It has curb cuts at either end, concrete entrances like it was a city street and it was being used as a city street and I wasn't aware of a problem.

*Id.*  Riddick explained the significance of the curb cuts: they may be installed only with city permission.  3RR34.  Riddick also pointed to a red line painted down part of the roadway, indicating no parking was allowed so that the roadway would be free for use by fire emergency trucks.  3RR37-39.  All of this testimony demonstrates that Riddick was led to believe, by his own mistaken assumption, that the roadway was a public street.

Finally, Riddick testified he contacted his seller (Lagerguist, DX9).  3RR16.  Yet, he never testified to any discussion with Lagerguist regarding the use of the roadway - - whether, for example, Lagerguist used the roadway by permission of the owner of the shopping center, or whether the owner of the shopping center allowed Lagerguist to use the roadway as a good neighbor.  There is no indication Lagerguist is deceased; therefore, if Lagerguist had told Riddick he (Lagerguist) had been given an easement to use the roadway, Riddick presumably would have called him as a witness.  And, while Riddick said he relied on a mortgagee's title issued to

-29-

Lagerguist's lender that contained "no exception to any of the incidents of [Lagerguist's] ownership," 3RR20, any limitation on title to property is no evidence that there was no easement.

There is no evidence that, when Riddick purchased his property, there was any representation by words, conduct or silence that Riddick had an easement on the roadway, nor is there any evidence Riddick believed or relied on any such representation. *See* CR101(COL No.6). The Court should sustain Issue No. 1, reverse the judgment, and render judgment declaring that Riddick does not have an easement by estoppel on the roadway.

### E. No easement by estoppel was created after Riddick purchased his property.

The absence of evidence that any easement by estoppel was created when Steves sold the Riddick property to Lifshutz, or when Riddick purchased his property, ends the inquiry. *See Lakeside Launches, Inc.*, 750 S.W.2d at 872. In any event, no easement was created after Riddick purchased his property.

#### 1. No easement was created by whoever owned the Robinson property before its sale to Atwell.

The Robinson property was owned by either Steves or by his independent executrix until its sale to Atwell on October 30, 1981. DX11. But, as discussed above, Riddick never testified to any conversation with Steves or with the independent executrix. As a consequence, there is no evidence any easement was created by

-30-

Steves or by his independent executrix between Riddick's purchase of his property on January 31, 1977 and when Atwell purchased the Robinson property on October 30, 1981.

### 2. Atwell did not create any easement during his ownership of the Robinson property.

Atwell owned the Robinson property from October 30, 1981, to December 28, 1992. DX11, DX14. There are a host of reasons Atwell did not create an easement during the time he and Riddick were neighbors.

Atwell never represented to Riddick that Riddick had an easement. Riddick admitted he never had any discussion with Atwell about the use of the roadway. 3RR53. In the absence of any representation of an easement communicated to Riddick, there is no easement by estoppel. *See Storms*, 579 S.W.2d at 451-52.

The parties' joint use of the roadway was presumed to be with Atwell's permission. Atwell testified "we both used the roadway for the benefits of both of our properties." 2RR170. That testimony establishes, as a matter of law, that Riddick's use of the roadway was permissive as opposed to an easement to use the roadway. *See Callan v. Walters*, 190 S.W. at 831-32. Use of the roadway by permission does not support an easement by estoppel. *See Martin v. Cockrell*, 335 S.W.3d 229, 238–41 (Tex.App.–Amarillo 2010, no pet.) ("gentlemen's agreement" or "friendly neighbourly permission" to use land does not support easement by estoppel). This law

establishes the contrary of the trial court's finding that Atwell believed and treated the roadway as if Riddick had "an easement to use the Roadway." *See* CR101(FOF No.34). *See City of Keller*, 168 S.W.3d at 816 (there is "no evidence" when there is "conclusive evidence to the contrary").

Atwell's silence or acquiescence did not constitute a representation that Riddick had an easement because Atwell did not owe Riddick a duty. The trial court found Atwell "did not halt or preclude" Riddick from using the roadway and that Atwell represented Riddick had an easement by permitting "open and obvious, frequent, and routine use" of the roadway. CR101(FOF Nos.35, 36). However, in the absence of duty, these findings do not, as a matter of law, give rise to an easement by estoppel. *Cf.*, *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d at 674 (in the absence of duty to disclose, failure to disclose does not constitute fraud). Any one of the following reasons will support a holding that Atwell did not owe Riddick any duty.

● There is no evidence Atwell "himself [was] aware" that there was no easement on his property. *See Storms*, 579 S.W.2d at 452 & n.5.

● There is no evidence Riddick gave Atwell notice his (Riddick's) use was adverse to Atwell. *See Callan v. Walters*, 190 S.W. 831-32 (to operate as notice to the silent party, the use of the alleged easement must be adverse, thereby giving notice of a claim of right, as opposed to a license to use the property). Based on the undisputed

evidence of joint use of the roadway, the law presumes Atwell gave Riddick a license
- - as opposed to an easement - - to use the roadway. *See id.*

● There is no evidence that: (a) Riddick was without knowledge, or the means of acquiring knowledge, of the facts alleged to have been misrepresented by Atwell, *see Wilson v. McGuffin*, 749 S.W.2d 606, 611 (Tex.App.–Corpus Christi 1988, writ denied); *Ramsey v. Champion*, 2014 WL 1882758, at *5; or (b) Riddick used due diligence to ascertain the truth of the matters upon which he relied in supposedly acting to his detriment. *See Ramsey*, 2014 WL 1882758, at *5.

Riddick is a lawyer, a self-described "real estate title man," and an expert on real-estate development. 3RR13, 19, 23. As a title examiner who examined thousands of titles in his career, 3RR14, Riddick knew the importance of that research: to "guarantee that the purchaser was obtaining good title and it met his requirements." 3RR15. He also knew, at the time of his purchase, that "you could call any mortgagee and they would open up their books . . . to determine the viability of [the] purchase." 3RR16. Despite this expertise and experience, there is no evidence Riddick researched the title to his property. If he had, he would have learned his property line ends approximately at the roof line of the head-in parking structures. 3RR36. Instead, as he conceded at trial, he "came to know that" at some other time. *Id.*

In addition to his expertise, Riddick was on notice from the Warranty Deed to his property that the conveyance was "subject to restrictions recorded in Volume

2165, Page 471, and Volume 2179, Page 279, Bexar County Deed Records[.]" DX9.

There is no evidence Riddick investigated the nature of those restrictions. Further, the documentary evidence reflects that the plats to both Riddick's and Robinson's properties were prepared from actual surveys and that the surveyor certified the plats were true and correct. DX2, DX6. Those plats show Steves acknowledged he dedicated to the public all "streets, alleys, parks, water courses, drains, easements and public places" depicted on the surveys. DX2, DX6. Again, there is no evidence Riddick made any inquiry into the information contained in the surveys.

● As the foregoing evidence establishes, Riddick had equal access to the facts, such as ownership of the property over which the easement is claimed. *Storms*, 579 S.W.2d at 452 & n.5; *Ramsey v. Champion*, 2014 WL 1882758, at *4.

● There was no vendor/vendee relationship between Atwell and Riddick. In the absences of such a relationship, "[a]n easement by estoppel may not be predicated upon silence and passive acquiescence alone." *Smith v. Reid*, 2015 WL 3895465, at *7; *see also Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex.App.–Austin 1998, no pet.) (in absence of vendor/vendee relationship between the parties, passive acquiescence "for no matter how long a period does not estop [the servient-estate owner] from denying the [dominant-estate owner's] claim of an easement by estoppel."); *Wilson v. McGuffin*, 749 S.W.2d at 610 (no duty to speak in non-vendor/vendee relationships in the absence of fraud).

-34-

There is no evidence Riddick believed, or relied upon, Atwell's alleged representation. Riddick never testified he believed he had an easement to use the roadway because of Atwell's alleged representation. In the absence of evidence that an alleged representation is believed, there is no easement by estoppel. *See Storms*, 579 S.W.2d at 452. There further is no evidence that Riddick relied to his detriment because of Atwell's purported silence or acquiescence. *See id.* (reliance is an element of easement by estoppel). Although the trial court found Riddick relied on Atwell's alleged representation by "continuing to use" the roadway, CR101(FOF No.36), use alone does not create an easement by estoppel. *Erwin v. Ferris*, 2011 WL 2638812, at *7.

To prove reliance, Riddick was required to show he "expended moneys which will be lost and valueless if the right to enjoy such easement is revoked." *F. J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 268 (1875). In this case, there is no evidence that, in reliance on Atwell's alleged silence or acquiescence, Riddick expended any moneys that will be lost and valueless. *See* CR101(FOF No.36) (referring to maintaining the roadway and "other things" Riddick supposedly did in reliance on Atwell's "representation.").

The main trash dumpster, which is partially located on the roadway, was in that location before Atwell and Riddick became neighbors. 3RR52.[8] Further, Riddick did not construct the concrete pad that supports truck activity at that dumpster during the time he and Atwell were neighbors. 3RR39-40. And, although Riddick made repairs and continued to maintain the roadway during the time he and Atwell were neighbors, Riddick did not testify he did that work in reliance on Atwell's alleged silence or acquiescence. Instead, by his own admission, Riddick did that work because of "damage caused by inclement weather and heavy truck use." 3RR55.

In conclusion, no evidence supports the trial court's findings that Atwell represented that Riddick had an easement to use the roadway, that Riddick believed any such representation, or that Riddick relied upon any such representation. *See* CR101(FOF Nos.35, 36; COL No.6). The Court should sustain Issue No. 1, reverse the trial court's judgment, and render judgment declaring that Riddick does not have an easement by estoppel on the roadway.

---

[8] Accordingly, there is no evidence to support the trial court's finding that Riddick "placed the main trash dumpster" in its location. *See* CR101(FOF No. 32).

**3. No easement was created by Mr. or Mrs. Yi during their ownership of the Robinson property.**

Atwell sold the Robinson property to Yong Bok Yi and his wife, Wha Seon Yi (the Yis), on December 28, 1992. DX15. Mr. and Mrs. Yi were Riddick's neighbors from that date until they sold the property to Robinson on June 15, 1997. PX1;DX16. Just as with Atwell, there is no evidence Mr. or Mrs. Yi created an easement over the roadway on their property.

The Yis never represented to Riddick that he had an easement. Neither Mr. or Mrs. Yi testified at trial, no one testified on their behalf, and Riddick did not testify he ever communicated with the couple. In the absence of any representation of an easement communicated to Riddick, there is no easement by estoppel. *See Storms*, 579 S.W.2d at 452.

Use of the roadway was presumed to be with the Yis' permission. During the time Robinson leased the property from the Yis, both Riddick and the Yis jointly used the roadway. 2RR118. That testimony establishes, as a matter of law, that Riddick's use of the roadway was permissive as opposed to an easement to use the roadway. *See Callan v. Walters*, 190 S.W. at 831-32. Use of the roadway by permission does not support an easement by estoppel. *See Martin v. Cockrell*, 335 S.W.3d at 238–41.

The Yis' silence or acquiescence did not constitute a representation that Riddick had an easement because the Yis did not owe Riddick a duty. As with Atwell, the trial

court found the Yis "did not halt or preclude" Riddick from using the roadway and that the Yis represented that Riddick had an easement by permitting "open and obvious, frequent, and routine use" of the roadway. CR101(FOF Nos.38, 39). However, in the absence of duty, these findings do not, as a matter of law, give rise to an easement by estoppel. *Cf.*, *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d at 674 (in the absence of duty to disclose, failure to disclose does not constitute fraud). Any one of the following reasons will support a holding that the Yis did not owe Riddick any duty.

● There is no evidence the couple was aware that Riddick did not have an easement to the roadway. *See Storms*, 579 S.W.2d at 452 & n.5.

● There is no evidence Riddick gave the couple notice his use was adverse. *See Callan v. Walters*, 190 S.W. at 831-32. Because it is undisputed the roadway is jointly used by the public, Riddick, and Robinson, 2RR99, 102-03, 113, 170, 172; 3RR20, 90, the law presumes the couple gave Riddick a license - - as opposed to an easement - - to use the roadway. *See id.*

● As discussed in paragraph II(E)(2) of the Argument above, there is no evidence Riddick was without the knowledge, or the means of acquiring it, of the facts Riddick claims the couple misrepresented. *See Wilson v. McGuffin*, 749 S.W.2d at 611.

-38-

● As discussed in paragraph II(E)(2) of the Argument above, there is no evidence Riddick used due diligence to ascertain the truth of the matters upon which he purportedly relied in acting to his detriment, *see Ramsey*, 2014 WL 1882758, at *5.

● As discussed in paragraph II(E)(2) above, the evidence establishes that Riddick had equal access to the facts, such as ownership of the property over which the easement is claimed. *See Storms*, 579 S.W.2d at 452 & n.5; *Ramsey v. Champion*, 2014 WL 1882758, at *4.

● There is no evidence of a vendor/vendee relationship between the couple and Riddick, *see Smith v. Reid*, 2015 WL 3895465, at *7.

<u>There is no evidence Riddick believed, or relied upon, the Yis' alleged representation.</u> Riddick never testified he believed he had an easement to use the roadway because of the Yis' alleged representation. In the absence of evidence that an alleged representation is believed, there is no easement by estoppel. *See Storms*, 579 S.W.2d at 452. Further, as discussed in paragraph II(E)(2) of the Argument above, there is no evidence Riddick relied to his detriment because of the Yis' purported representation. *See id.* (reliance is an element of easement by estoppel). And, while the trial court found Riddick relied on the Yis' alleged representation by "continuing to use" the roadway, CR101(FOF No.39), use alone does not create an easement by estoppel. *Erwin v. Ferris*, 2011 WL 2638812, at *7.

-39-

In conclusion, no evidence supports the trial court's findings that the Yis represented that Riddick had an easement to use the roadway, that Riddick believed any such representation, or that Riddick relied on any such representation. *See* CR101(FOF Nos.38, 39; COL No.6). The Court should sustain Issue No. 1, reverse the trial court's judgment, and render judgment declaring that Riddick does not have an easement by estoppel on the roadway.

### 4. Robinson did not create any easement on the roadway.

Robinson purchased the property from Mr. and Mrs. Yi on June 15, 1997. PX1; DX16. As with Atwell and the Yis, Robinson did not create any easement on the roadway.

Robinson never represented to Riddick that he had an easement. Riddick conceded he never had any oral communication with Robinson about the roadway between the two properties. 3RR87. In the absence of any representation of an easement communicated to Riddick, there is no easement by estoppel. *See Storms*, 579 S.W.2d at 452.

The parties' joint use of the roadway was presumed to be with Robinson's permission. It is undisputed the public, Riddick and Robinson use the roadway. 2RR99, 102-03, 113, 170, 172; 3RR20, 90. That testimony establishes, as a matter of law, that Riddick's use of the roadway was permissive as opposed to an easement to use the roadway. *See Callan v. Walters*, 190 S.W. at 831-32. Use of the roadway

by permission does not support an easement by estoppel. *See Martin v. Cockrell*, 335 S.W.3d at 238–41.

Robinson's silence or acquiescence did not constitute a representation that Riddick had an easement because Robinson did not owe Riddick a duty. The trial court found that Robinson represented Riddick had an easement by acquiescing to, and by permitting, "open and obvious, frequent, and routine use" of the roadway. CR101(FOF Nos.47, 52, 58). However, in the absence of duty, these findings do not, as a matter of law, give rise to an easement by estoppel. *Cf.*, *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d at 674 (in the absence of duty to disclose, failure to disclose does not constitute fraud). Any one of the following reasons will support a holding that Robinson did not owe Riddick any duty.

● There is no evidence Robinson was aware Riddick did not have an easement on the roadway. *See Storms*, 579 S.W.2d at 452 & n.5.

● As discussed in paragraph II(E)(2) of the Argument above, there is no evidence Riddick gave Robinson notice his use was adverse. *See Callan v. Walters*, 190 S.W.2d at 832. Because it is undisputed the roadway is jointly used by the public, Riddick, and Robinson, 2RR99, 102-03, 113, 170, 172; 3RR20, 90, the law presumes Robinson gave Riddick a license - - as opposed to an easement - - to use the roadway. *See id.*

● As discussed in paragraph II(E)(2) of the Argument above, there is no evidence Riddick was without the knowledge, or the means of acquiring it, of the facts Riddick claims Robinson misrepresented. *See Wilson v. McGuffin*, 749 S.W.2d at 611.

● As discussed in paragraph II(E)(2) of the Argument above, there is no evidence Riddick used due diligence to ascertain the truth of the matters upon which he purportedly relied in acting to his detriment. *See Ramsey*, 2014 WL 1882758, at *5.

● As discussed in paragraph II(E)(2) above, the evidence establishes Riddick had equal access to the facts, such as ownership of the property over which the easement is claimed. *See Storms*, 579 S.W.2d at 452 & n.5; *Ramsey v. Champion*, 2014 WL 1882758, at *4.

● There is no evidence Robinson acted fraudulently. *See Wilson v. McGuffin*, 749 S.W.2d at 610 (no duty to speak in non-vendor/vendee relationships in the absence of fraud). Riddick admitted that, other than Robinson's letter notifying him that he was trespassing on Robinson's property, Robinson never made any false or fraudulent statements to him regarding the roadway. 3RR87.

● There is no evidence of a vendor/vendee relationship between Robinson and Riddick, *see Smith v. Reid*, 2015 WL 3895465, at *7.

There is no evidence Riddick believed, or relied upon, Robinson's alleged representation. Riddick never testified he believed he had an easement to use the roadway because of Robinson's alleged representation. In the absence of evidence that an alleged representation is believed, there is no easement by estoppel. *See Storms*, 579 S.W.2d at 452. Just as with its findings of Riddick's reliance on Atwell's and the Yis' alleged representations, the trial court found Riddick relied on Robinson's alleged representations by "continuing to use the roadway." CR101(FOF Nos.47, 52, 58). As explained above, use alone does not create an easement by estoppel. *Erwin v. Ferris*, 2011 WL 2638812, at *7.

The trial court also found that Riddick relied by: (1) maintaining the roadway; (2) placing the trash dumpster on part of the roadway; (3) constructing the concrete pad; (4) improving and maintaining the head-in parking and the attached storage spaces; (5) using the roadway for compliance with City Code requirements; and (6) "other things" that were unspecified. CR101(FOF Nos.47, 48, 52, 58, 59). As explained below, there is no evidence Riddick relied on any representations Robinson allegedly made in doing the things the court found.

**(1) Maintaining the roadway:** By his own admission, Riddick did that work because of "damage caused by inclement weather and heavy truck use." 3RR55.

**(2) Placing the dumpster on part of the roadway**: The main trash dumpster was in its location partially on the roadway when Riddick purchased the property.

3RR52. As for the recycle dumpster, Riddick admitted it was "required by the City of San Antonio." 3RR52.

**(3) Constructing the concrete pad:** By his own admission, Riddick installed the concrete pad because he believed the roadway was public and, thus, he had unfettered use of the roadway. 3RR41. He also conceded that because "we were the ones entering onto the asphalt at the location of the dumpster . . . it was incumbent on us to fix it[.]" 3RR41-42. As Riddick explained, the Waste Management trucks regularly cause damage to everything. 3RR73. Therefore, it was necessary to build the concrete pad to prevent damage caused by Waste Management trucks approaching the dumpster, hitting the brakes, and emptying the dumpster, and its construction eliminated the need for constant repair of the asphalt. 3RR75. Before the construction of the pad, the damage to the asphalt "got so bad we had to repair it . . . whenever it was in disrepair." 3RR76. And, because the ground would get soft during inclement weather, the pad eliminated the need for constant repair. 3RR75.

**(4) Improving and maintaining the head-in parking and the attached storage spaces:** By his own admission, Riddick removed most of the storage units because, "for whatever reason, [he] determined it was appropriate to [the] viability of his apartment complex." 3RR47. With respect to the head-in parking, Riddick did not testify he improved it or that he maintained it.

**(5) Using the roadway for compliance with City Code requirements:** This finding on its face reveals Riddick used the roadway - - not because of any reliance on Robinson's alleged representation that he had an easement - - but to comply with City Code requirements.

**(6) Other things.** There is no evidence that, aside from the things the trial court specified in its findings, Riddick did any "other things" in reliance on any representation by Robinson that Riddick had an easement on the roadway.

Lastly, Riddick's testimony that, without an easement to use the roadway to access the 25 head-in parking spaces, it would "be devastating to the value" of the apartments and he would not be able to operate the apartment complex, 3RR26, is immaterial. Moreover, this testimony ignores Robinson's offer to allow Riddick use of the roadway on her property in return for payment for that use. DX19-22.

In conclusion, no evidence supports the trial court's findings that Robinson represented that Riddick had an easement to use the roadway, that Riddick believed any such representation, or that Riddick relied on any such representation. *See* CR101(FOF Nos.47, 48, 52, 58, 59; COL No.6). The Court should sustain Issue No. 1, reverse the trial court's judgment, and render judgment declaring Riddick does not have an easement by estoppel.

## II. The judgment alternatively granting Riddick an easement by prescription must be reversed.

The trial court's judgment alternatively grants Riddick an easement by prescription on the roadway in the event this Court should "determine there is legally or factually insufficient evidence of any representation allowing Riddick to use the roadway the subject of this lawsuit under the theory of easement by estoppel[.]" CR50(¶h). Accordingly, if the Court determines that the judgment granting Riddick an easement by estoppel must be reversed for any other reason, then the Court need not address Robinson's Issue No. 2. If the Court reaches this issue, there is no evidence to support an easement by prescription.

### A. Applicable law.

To establish an easement by prescription, the claimant must show that his use of another's land was open, notorious, continuous, exclusive, and adverse for a period of ten years. *Brooks v. Jones*, 578 S.W.2d at 673; *Estate of Trevino*, 2009 WL 891881, at *3. The party claiming an easement by prescription has the burden to prove all the requisite elements, and the failure to establish any one element will defeat the claim. *Texas W. Ry. Co. v. Wilson*, 83 Tex. 153, 156, 18 S.W. 325, 326 (1892); *Estate of Trevino*, 2009 WL 891881, at *3.

For more than a century, the rule in Texas has been that "when a landowner and the claimant of an easement both use the same way, the use by the claimant is not

-46-

exclusive of the owner's use and therefore will not be considered adverse." *Brooks*, 578 S.W.2d at 673. The rule originated in the case of *Sassman v. Collins*, where the court held that "[t]he use of a way in common with others or the general public is not sufficient to create a prescriptive right to such way[.]" 115 S.W. 337, 339 (Tex.Civ.App.1908, writ ref'd).[9/]

The rule has been followed without exception by the Texas Supreme Court and by this Court. *See*, *e.g.*, *Brooks*, 578 S.W.2d at 674 (holding there was no evidence of exclusiveness of use where both the landowner and the claimant used the road in furtherance of his own purposes); *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex.1987) (exclusivity not met when landowner and claimant both used the road); *RDG Partnership v. Long*, 350 S.W.3d 262, 275 (Tex.App.–San Antonio 2011, no pet.) ("both the Texas Supreme Court and this court continue to cite joint use as a basis for rejecting a claim of easement by prescription."). Most recently, the Texas Supreme Court applied the century-old rule in an adverse possession case. *See Tran v. Macha*, 213 S.W.3d 913, 914-15 (Tex.2006) (holding that, because the driveway in question was jointly used by the adjoining landowners, such use "was not inconsistent with or hostile to" the property owner's rights of ownership).

---

[9/] Because *Sassman* is a "writ refused" opinion decided after 1892, it has the same precedential value of a Texas Supreme Court opinion. *State v. Clear Channel Outdoor, Inc.*, No. 01–11–00197–CV, 2012 WL 4465338, at *4 n. 3 (Tex.App.–Houston [1st Dist.] 2012), *rev'd on other grounds*, No. 13-0053, 2015 WL 1870306 (Tex.April 24, 2015) (citing *The Greenbook: Texas Rules of Form* app. E (Texas Law Review Ass'n ed., 12th ed.2010).

The reasoning behind the rule is simple.  When the property is used by the public or by the owner of the property, the easement claimant's use is presumed to be with the owner's permission. *Othen v. Rosier*, 148 Tex. 485, 492, 226 S.W.2d 622, 627 (1950); *see also Sassman*, 115 S.W. at 340 ("[T]he use of the way by others is presumed to be with the consent of the owner, and not adverse."); *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 881 (1960) (permissive use of a way over land of another contemporaneously with owner's use of same way is not adverse); *Weber v. Chaney*, 5 S.W.2d 213, 214 (Tex.App.–San Antonio 1928, writ ref'd) (use of roadway by public and owner of servient estate and his family, employees, and tenants was permissive and amounted to no adverse claim against the property owner).[10/]

**B.     Joint use of the roadway in this case is fatal to a prescriptive easement.**

In this case, it is undisputed that the public, Riddick and his predecessors, and Robinson and her predecessors have jointly used the roadway since about 1960. 2RR99, 102-03, 113, 170, 172; CT.EX.1(pp.14-16, 24); 3RR20, 90.  This evidence conclusively establishes that Riddick's use is not exclusive of Robinson's use and, therefore, Riddick's use is not adverse.  *See City of Keller*, 168 S.W.3d at 816 (there is "no evidence" when there is "conclusive evidence to the contrary").  "A legal

---

[10/] In its findings, the trial court assumed that Riddick, the apartments, and the tenants "did not have implicit permission to use the Roadway." CR101(62-63).  Because that assumption is contrary to the law, it is not supported by any evidence.

-48-

sufficiency challenge will be sustained when the record confirms ... the evidence conclusively establishes the opposite of the vital fact." *Ford Motor Co. v. Castillo*, 414 S.W.3d 616, 620 (Tex.2014).

Because there is no evidence of the elements of exclusivity and adversity, the trial court erred in finding to the contrary. *See* CR101(FOF Nos. 62-63; COL No. 7). Should the Court reach Issue No. 2, the issue should be sustained and the judgment alternatively granting Riddick a prescriptive easement should be reversed.

### C.     There is no evidence of hostility.

In addition to the foregoing reasons to reverse the judgment alternatively declaring that Riddick has an easement by prescription, the judgment also may be reversed because there is no evidence Riddick's use of the roadway was hostile.

An easement claimant must prove the use is hostile and adverse. *Othen*, 148 Tex. at 492, 226 S.W.2d at 626; *Estate of Trevino*, 2009 WL 891881, at *3. The terms "adverse" and "hostile" have long had specific legal meanings with reference to a claim of taking of rights in another's land by prescription or by adverse possession. *Harrington v. Dawson-Conway Ranch, Ltd.*, 372 S.W.3d 711, 719 (Tex.App.−Eastland 2012, pet. denied). The adversity element requires a claimant to assert a "claim of right" in the land in question for the requisite period. *Werchan v. Lakewood Estates Ass'n*, No. 03-08-00417-CV, 2009 WL 2567937, at *5 (Tex.App.−Austin 2009, pet. denied).

To satisfy the requirement of an independent act of hostility, the easement claimant must exclude, or attempt to exclude, all other persons, including the true property owner, from using the property. *Estate of Trevino*, 2009 WL 891881, at *4; *McClung v. Ayers*, 352 S.W.3d 723, 728 (Tex.App.–Texarkana 2011, no pet.); *Allen v. Allen*, 280 S.W.3d at 377-78; *Mack v. Landry*, 22 S.W.3d 524, 532 (Tex.App.–Houston [14th Dist.] 2000, no pet.). By statute, this is the same rule as in adverse-possession cases. Under the Civil Practice and Remedies Code, adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM.CODE § 16.021(1).

Just as in prescriptive-easement cases, the statute requires that "there must be an intention to claim property as one's own to the exclusion of all others[.]" *Tran*, 213 S.W.3d at 915; *see also Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mt. Ranch, Inc.*, 426 S.W.3d 800, 808 (Tex.App.–San Antonio 2014, pet. denied) (to satisfy hostility element, claimant must intend to claim the property as one's own to the exclusion of all others). The court in *Tran* applied the century-old rule that joint use fails the exclusivity test and held that there was no adverse possession of the driveway in question based, in part, on the lack of any evidence that the neighbor claiming adverse possession of the driveway ever intended to exclude the owner. 213 S.W.3d at 915.

In this case, there is no evidence that Riddick excluded, or attempted to exclude, all other persons from using Robinson's property. Rather, as Riddick himself conceded, he never excluded anyone from using the roadway, nor has he ever tried to change the use of the roadway by those who wanted to use it. 3RR88. And, Atwell's testimony that he considered the apartment tenant's use of the roadway to be a "right," 2RR170, is conclusory and no evidence. Statements without any evidentiary foundation are purely speculative and conclusory. *Total Clean, LLC v. Cox Smith Matthews Inc.*, 330 S.W.3d 657, 667 (Tex.App.–San Antonio 2010, pet. denied). Conclusory testimony, even if uncontradicted, does not constitute legally sufficient evidence. *In re A.H.*, 414 S.W.3d 802, 807 (Tex.App.–San Antonio 2013, no pet.).

## D. Conclusion.

In conclusion, no evidence supports the trial court's findings that Riddick had an easement by prescription. *See* CR101(FOF Nos.62, 63). Accordingly, if the Court reaches Issue No. 2, it should sustain the issue, reverse the trial court's judgment alternatively granting Riddick an easement by prescription, and render judgment declaring that Riddick does not have an easement by prescription on the roadway on Robinson's property.

## III. Riddick is not entitled to recover attorney's fees.

Riddick sought recovery of his attorney's fees under the Texas Declaratory Judgments Act (TDJA). CR30(¶39, 40).[11/] The trial court's judgment awards Riddick attorney's fees for trial and conditional fees for appeal. CR50(¶¶j, l). The judgment, together with the trial court's findings and conclusions, reflect that Riddick recovered attorney's fees under the TDJA. *Id.*; CR101(¶¶9, 11-12). However, even if this Court were to affirm the trial court's judgment awarding Riddick an easement by estoppel, or, alternatively, an easement by prescription, Riddick is not entitled to recover attorney's fees as a matter of law.

The TDJA permits parties to obtain judicial declarations of their rights, status, and legal relations under a statute, under contracts and other written agreements, or when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties. TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a). In any proceeding under the Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009. This case involves a purported common-law easement that does not fall within any of the bases for recovery of attorney's fees under the TDJA.

Recovery of attorney's fees in easement cases under the TDJA is limited to those instances involving the construction of a written agreement. *See*, *e.g.*, *Smith v.*

---

[11/] Riddick also sought attorney's fees "due to Robinson's frivolous filing." CR30(¶4). The trial court's judgment denied Riddick this relief, CR50(¶i), and Riddick has not appealed the judgment.

*Reid*, 2015 WL 3895465, at \*10 (recovery of attorney's fees under TDJA is proper where trial court found attorney's fees were based on breach of express covenant); *Herring v. Bocquet*, 933 S.W.2d 611, 612 (Tex.App.–San Antonio 1996) (affirming judgment awarding attorney's fees under the TDJA where legal interpretation and construction of deed granting easement was at issue), *rev'd on other grounds*, 972 S.W.2d 19 (Tex.1998); *Roberson v. City of Austin*, 157 S.W.3d 130, 133 (Tex.App.–Austin 2005, no pet.) (TDJA available to determine validity of an easement agreement).

In this case, Robinson timely filed a Motion to Modify, Correct, or Reform Judgment asserting that Riddick is not entitled to recover attorney's fees under the TDJA. CR56(¶7). The motion was overruled by operation of law. *See* TEX.R.CIV.P. 329b(c). If the Court affirms the trial court's judgment, the Court should nonetheless sustain Issue No. 3, reverse the trial court's judgment awarding Riddick trial and conditional appellate attorney's fees, and render judgment that Riddick take nothing on his claim for attorney's fees.

Alternatively, if the Court reverses the trial court's declaratory judgment in Riddick's favor, then the Court may also reverse Riddick's recovery of attorney's fees and render judgment that Riddick take nothing. After a declaratory judgment is reversed on appeal, an award of attorney's fees may no longer be equitable and just. *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128

S.W.3d 304, 324 (Tex.App.–Dallas 2004, no pet.). When an appellate court reverses a declaratory judgment, it may reverse an attorney's fee award, but it is not required to do so. *Kachina Pipeline Co., Inc. v. Lillis*, ___ S.W.3d ___, No. 13–0596, 2015 WL 3653272, at *___ (Tex.June 15, 2015).

Finally, in the further alternative, if the Court reverses the declaratory judgment in Riddick's favor, the parties' claims for attorney's fees should be remanded to the trial court. *See Grohman–Kahlig v. Kahlig*, No. 04–07–00468–CV, 2008 WL 5377704, at *1 (Tex.App.–San Antonio 2008, no pet.) (mem. op.) (op. on rehg).

## CONCLUSION AND PRAYER

For the reasons stated, the Court should reverse the trial court's judgment granting Riddick an easement by estoppel and render judgment declaring that Riddick has no easement by estoppel. The trial court's judgment alternatively granting Riddick an easement by prescription should be reversed and judgment rendered that Riddick take nothing. The trial court's judgment granting Riddick his attorney's fees should be reversed and judgment rendered that Riddick take nothing, or, alternatively, the parties' attorney's fees should be remanded for a new trial.

Respectfully submitted,

JOANN STOREY, P.C.

BY: /s/ **JoAnn Storey**
JoAnn Storey
State Bar No. 19315300
1005 Heights Boulevard
Houston, Texas 77008
Telephone: 713/529-0048
Facsimile: 713/529-2498
Email: storeyj@heightslaw.com

*Counsel on appeal for appellant,*
*Kyu Im Robinson*

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this Appellants' Brief is **13,553**, excluding the following: captions, identity of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certificate of compliance, and appendix

This brief complies with the typeface requirements of TRAP 9.4(e) because it uses a conventional typeface no smaller than 14-point (WordPerfect X4 14-point Times New Roman).

/s/ **JoAnn Storey**
JoAnn Storey

## CERTIFICATE OF SERVICE

On July 21, 2015, I sent a true and correct copy of the foregoing *Appellant's Brief* via ProDoc® electronic filing to the following:

Gay Gueringer
Katherine J. Walters
RICHIE & GUERINGER, P.C.
112 E. Pecan St., Suite 1420
San Antonio, Texas 78205

***Counsel for appellee, William P. Riddick,***
***Individually and as Trustee of the***
***Wm P. Riddick − 76 Trust***

/s/ **JoAnn Storey**

JoAnn Storey

## APPENDIX

Final Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab A

Amended Findings of Fact and Conclusions of Law . . . . . . . . . . . . . . . . . . . Tab B

# TAB A



2013CI07766 -0131

CAUSE NO. 2013-CI-07766

| KYU IM ROBINSON | § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 131ST JUDICIAL DISTRICT |
| | § | |
| | § | |
| JESS L. MAYFIELD, TRUSTEE | § | |
| Defendant/Counter-Plaintiffs. | § | BEXAR COUNTY, TEXAS |

## FINAL JUDGMENT

On January 12, 2015, the Court called this case for trial. Plaintiff/Counter-Defendant, Kyu Im Robinson (sometimes referred to as "**Robinson**"), appeared in person and by and through her attorneys of record, Steve Weakley of the Law Office of Steve Weakley, P.C., as assisted by JoAnn Storey of JoAnn Storey, P.C. Defendants/Counter-Plaintiffs, William P. Riddick, Individually and as Trustee of the Wm P. Riddick – 76 Trust (sometimes collectively referred to as "**Riddick**"), appeared in person and by and through their attorneys of record, Gay Gueringer and Katherine J. Walters of Richie & Gueringer, P.C. Pursuant to the agreement of the parties, this matter was removed from the jury docket and tried to the Court. All parties announced ready for trial.

The Court determined it had jurisdiction over the parties and subject matter of this case.

The cause proceeded to trial with the making of opening statements by the parties and the introduction of evidence. Thereafter, all parties rested their cases, the evidence was closed, and counsel presented their closing arguments. Thereafter, the Court made its findings and rendered its decision.

THE COURT HEREBY ORDERS, ADJUDGES AND FINALLY DECREES that:

a. Robinson's request for temporary and permanent injunction against Riddick is DENIED.

b. Robinson's request for entry of declaratory relief against Riddick's interest in Robinson's property is DENIED.

c. Robinson's claim to trespass to try title and associated damages against Riddick was WITHDRAWN.

d. Robinson's claim of trespass against Riddick is DENIED.

e. Robinson's claim for attorneys' fees against Riddick is DENIED.

f. Riddick's claim for easement by prior use or necessity against Robinson is DENIED.

g. Riddick's claim for easement by estoppel asserted against Robinson and her property IS FOUND MERITORIOUS AND ESTABLISHED; therefore, Riddick is GRANTED against Robinson, a permanent easement by estoppel on and over the roadway on Robinson's property, which easement is appurtenant to and shall run with the Riddick property and is coextensive with the legal description of the currently existing utility easement described in that certain Electrical Easement granted by Albert Steves, III, to the City Public Services Board, dated February 23, 1960, and recorded at Volume 4433, Page 263, Real Property Records of Bexar County, Texas ("**Existing Utility Easement**"), more specifically defined as:

> Being a part of Lot 7, Block 13, NCB 9142, Bel Meade Addition, City of San Antonio, County of Bexar, according to the plat thereof recorded in Volume 5870, Page 205, Deed and Plat Records of Bexar County, Texas, more particularly described as lying parallel to and thirty feet (30') from the Southwest lot line of said property, beginning at Burr Road and extending Southeasterly two hundred and fifty five feet (SE-255') to Harry Wurzbach; Thence Southwesterly approximately thirty feet (SW-30') to the Southwest lot line of said Lot 7.

h. Should a reviewing court determine there is legally or factually insufficient evidence of any representation allowing Riddick to use the roadway the subject of this lawsuit under the theory of easement by estoppel, then in the alternative, Riddick is

GRANTED against Robinson, an easement by prescription on and over the roadway on Robinson's property, which easement is coextensive with the legal description of the Existing Utility Easement.

i.    Riddick's counterclaim seeking sanctions against Robinson is DENIED.

j.    Riddick's request for trial attorneys' fees against Robinson is GRANTED and Riddick shall have and recover from Robinson, equitable and just and reasonable and necessary attorney's fees in the amount of Sixty Thousand and No/100 Dollars ($60,000.00).

k.    Riddick shall have and recover from Robinson, post-judgment interest on the said awarded legal fees at the rate of five percent (5%) per annum from and including the date of the judgment through and including the date the Judgment is paid in full.

l.    Riddick's request for appellate attorneys' fees is CONDITIONALLY GRANTED against Robinson and Riddick shall have and recover from Robinson further attorneys' fees that are reasonable and necessary and equitable and just as follows:

    i.    If Robinson files an appeal to the Court of Appeals and she is unsuccessful, Riddick is awarded Thirty Thousand and No/100 Dollars ($30,000.00) for briefing the case to the Court of Appeals.

    ii.    If Robinson files a Petition for Review in the Texas Supreme Court and she is unsuccessful Riddick is awarded:

        a.    Fifteen Thousand and No/100 Dollars ($15,000.00) for responding to the Petition for Review;

        b.    Fifteen Thousand and No/100 Dollars ($15,000.00) for drafting and filings briefs on the merits if such is ordered by the Texas Supreme Court; and

        c.    Fifteen Thousand and No/100 Dollars ($15,000.00) for oral argument if such is ordered by the Texas Supreme Court.

m.    Riddick shall have and recover from Robinson court costs in the amount of One Thousand Six Hundred Seventeen and 30/100 Dollars ($1,617.30).

All relief not expressly granted by this judgment is DENIED. This is a FINAL JUDGMENT, disposing of all claims and all parties and is appealable. The Clerk shall issue such writs in support of execution as Defendants/Counter-Plaintiffs, William P. Riddick, Individually and as Trustee of the Wm P. Riddick – 76 Trust, may lawfully request. The Bexar County Clerk is hereby directed to record a certified copy of this Final Judgment in the Real Property Records of Bexar County, Texas.

SIGNED this _3_ day of ~~January~~ *February* 2015.

_____
JUDGE RENÉE YANTA

**SUBMITTED BY:**

**RICHIE & GUERINGER, P.C.**

BY: _____
GAY GUERINGER
State Bar No. 08571400
KATHERINE J. WALTERS
State Bar No. 00785174
112 E. Pecan, Suite 1420
San Antonio, Texas 78205
Tel: (210) 220-1080/Fax: (210) 220-1088
Email: ggueringer@rg-sanantonio.com
Email: kwalters@rg-austin.com
**ATTORNEYS FOR DEFENDANTS/COUNTER-PLAINTIFFS**

**APPROVED AS TO FORM ONLY:**

**LAW OFFICE OF STEVE WEAKLEY, P.C.**

By: _____
STEVE WEAKLEY
State Bar No. 20992300
5150 Broadway No. 403
San Antonio, Texas 78209
Telephone: 210-364-7406
Facsimile: 210-587-6537
Email: stevew@steveweakleylawyer.com
**ATTORNEY FOR PLAINTIFF/COUNTER-DEFENDANT**

---

Final Judgment
Sak:\7606\001\Motions\Judgment

# TAB B



2013CI07766 -P00080

CAUSE NO. 2013-CI-07766

| | | |
|---|---|---|
| KYU IM ROBINSON | § | IN THE DISTRICT COURT |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 131ST JUDICIAL DISTRICT |
| | § | |
| JESS L. MAYFIELD, TRUSTEE | § | |
| Defendant/Counter-Plaintiffs. | § | BEXAR COUNTY, TEXAS |

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT[1]

1. The Regency House Apartments is an apartment complex located at 1103 Harry Wurzbach (and/or 900 Burr Road) in San Antonio, Texas (the "Apartments"), being more specifically described as:

> Lot 3, Block 13, NCB 9142, Bel Meade Addition, lying and being situated within the corporate limits of the City of San Antonio, Bexar County, Texas, according to map or plat thereof recorded in Volume 4305, Page 127, Deed and Plat Records of Bexar County, Texas, and all improvements situated thereon (the "Riddick Property").

2. Plaintiff/Counter-Defendant, Kyu Im Robinson ("Robinson"), is the owner of a commercial shopping center (the "Shopping Center") located at 1155 Harry Wurzbach Road in San Antonio, Texas, and being more specifically described as:

> Lot 7, Block 13, NCB 9142, Bel Meade Addition, City of San Antonio, County of Bexar, according to the plat thereof recorded in Vol. 5870, Page 205, Deed and Plat Records of Bexar County, Texas (the "Robinson Property").

3. The Robinson Property is directly adjacent to and abuts the Riddick Property on the southwest lot line of the Robinson Property, which is also the northeast lot line of the Riddick Property.

4. In December 1945, Steves Brothers, Inc. and Ed Steves & Sons (collectively the "Steves Brothers") platted and developed the Bel Meade Neighborhood ("Original Plat").

5. Block 13, NCB 9142 out of the Original Plat was a triangular-shaped lot bordered by Burr Road to the North; Beverly Drive (now known as Raphail Drive) to the West; and Military Highway (now known as Harry Wurzbach) to the South.

---

[1] To the extent the following statements are considered conclusions of law, they are also incorporated in the section below entitled, Conclusions of Law.

---

Amended Findings of Fact and Conclusions of Law
101

6.    Sometime before January 1954, a paved roadway (the "Roadway") was constructed on Block 13, NCB 9142 out of the Original Plat.

7.    In March 1956, Albert Steves, III, as authorized representative of the owner, filed a Plat dividing Block 13, NCB 9142 into two Lots—Lot 1 (a smaller lot at the northeastern-most corner) and Lot 2 (the remaining portion of Block 13, NCB 9142).

8.    In August 1959, Lot 2, Block 13, NCB 9142 was replatted into two lots—Lot 3 (which is what is being referred to as the Riddick Property) and Lot 4.

9.    In April 1968, Lot 4 was replatted as Lots 6 and 7, of which Lot 7 is being referred to as the Robinson Property; the Roadway is located on the southwest lot line of Lot 7.

10.   Prior to September 1959 and prior to the conveyance of Lot 3 to B. Lee Lifshutz ("Lifshutz"), architectural and engineering drawings ("1959 Architectural Drawings") were made for development of Lot 3.

11.   The 1959 Architectural Drawings designed an apartment complex (the "Apartments") in a manner that required the Apartments and its tenants to be able to use the Roadway.

12.   The Apartments were designed utilizing head-in parking, which would be accessible only by use of the Roadway (the "Head-In Parking").

13.   The Apartments were designed with several other characteristics making it necessary and intended for the Apartments and its tenants to continuously use the Roadway.  For example, stair-steps from the Apartments lead out into the Roadway; the hot water boilers used in the Apartments are accessible only from the Roadway; and the Apartments' electrical infrastructure is accessible only from the Roadway.

14.   On October 9, 1959, Albert Steves, III, as authorized representative of the owner, conveyed Lot 3 (Riddick Property) to Lifshutz.  Soon thereafter, Lifshutz constructed the Apartments, consisting of 45 units, essentially as designed on the 1959 Architectural Drawings, with the Head-In Parking.

15.   The Head-In Parking follows the design shown on the 1959 Architectural Drawings; thus, these parking spaces make it necessary for the Apartments and its tenants to use the Roadway as the parking spaces are only accessible via the Roadway.

16.   The Steves Brothers did not halt or preclude the construction of the Apartments as designed; namely, that the Apartments would need to use the Roadway.

17.   By not halting or precluding the construction of the Apartments with the Head-In Parking as designed on the 1959 Architectural Drawings, and then by allowing open and obvious use of the Roadway by the Apartments and its tenants, the Steves Brothers represented to Lifshutz he and the Apartments and its tenants had an easement to use the Roadway, and could use the Roadway for the benefit of the Apartments and its tenants (the "Steves Representation").

DOCUMENT SCANNED AS FILED

18. Lifshutz believed and relied on the Steves Representation by completing the construction of the Apartments as designed, with the Head-In Parking immediately adjacent to the Paved Roadway and accessible only by the Paved Roadway.

19. So believing and relying on the Steves Representation, Lifshutz constructed the Apartments with the Head-In Parking on the northeast lot line, on the border between Lot 3 (the Riddick Property) and Lot 7 (the Robinson Property), necessitating that the Apartments and its tenants utilize the Roadway routinely, daily, and continuously to access the Head-In Parking.

20. On February 23, 1960, Albert Steves, III, executed an Electric Right-of-Way Easement to the City Public Services Board to construct an overhead service line on what was then known as Lot 4 and what is now Lot 7, also known as the Robinson Property (the "Electrical Easement"). The Electrical Easement was located:

> ...parallel to and thirty feet (30') from the Southwest lot line [of Lot 4] beginning at the Burr Road and extending Southeasterly two hundred and fifty five feet (SE-255'); Thence Southwesterly approximately thirty feet (SW-30') to the Southwest lot line. Further, the Electrical Easement provided:

> Said City of San Antonio shall at all times have the right to enter in and upon the above described land for the purpose of repairing, maintaining and removing said electrical service line, including the right to trim trees to the extent necessary to keep said electric line clear.

21. The Electrical Easement continues to be utilized, including to provide utilities to the Apartments, and its dimensions are the same as the land on which the Roadway was constructed.

22. The Roadway has had curb cuts on each end since at least 1977, which lead into the Roadway and which facilitate use of the Roadway by the Apartments and its tenants.

23. The Roadway is the same road depicted in the 1954 aerial photograph, which is admitted into evidence as Exhibit D26B.

24. Since construction of the Apartments in approximately 1960, tenants of the Apartments, tenants of the Shopping Center, service vendors of the Apartments and Shopping Center, and the public have used the Roadway routinely, daily, and continuously.

25. On January 31, 1977, Lot 3 (the Riddick Property) was conveyed to William P. Riddick and Thomas R. Riddick. Thereafter, Thomas R. Riddick conveyed his interest in the Riddick Property to individual trusts created for the benefit of Cynthia A. Riddick, William McDonald Riddick, Warren Pretlow Riddick and Patricia Swann Riddick (collectively referred to herein as "Defendants/Counter-Plaintiffs" and/or "Riddick").

26. Since at least 1977, there has never been any signage to identify the Roadway as a private road.

---

DOCUMENT SCANNED AS FILED

27. Since at least 1977, no one has ever placed a fence or any other physical barrier or restriction in any way limiting or prohibiting Riddick's or the Apartments' and its tenants' use of the Roadway.

28. Since at least 1977 and until April 19, 2007, no one instructed nor demanded Riddick or the Apartments and its tenants not use the Roadway.

29. Since 1977, Riddick has been solely responsible for maintaining the Roadway and solely responsible for the cost for maintaining and improving the Roadway.

30. There is no evidence indicating anyone other than Riddick and Riddick's predecessors-in-interest have been solely responsible for maintaining and improving the Roadway.

31. In July 2001, without permission from the Lot 7 property owner, Riddick had a concrete pad constructed within the Roadway to accommodate the truck servicing a trash dumpster used by the Apartments. The concrete pad was constructed using base material, rebar and concrete, is 10' x 20' x 5" of concrete in its dimension, and took approximately a week to construct.

32. From 1977 until the present, Riddick placed the main trash dumpster for the Apartments in a location that could only be serviced by use of the Roadway and which is, in part, in the Roadway; Riddick did so without express permission from the Lot 7 property owner.

33. William W. Atwell and Atwell Properties, Ltd. (collectively referred to as "Atwell") owned Lot 7 from 1981-1992.

34. Atwell understood and treated the Roadway as being built to benefit both Lot 3 (Riddick Property) and Lot 7 (Robinson Property); Atwell believed and treated the Roadway as if the Apartments and its tenants have permission and an easement to use the Roadway.

35. Atwell did not halt or preclude the Apartments and its tenants from using the Roadway.

36. By Atwell's conduct of permitting open and obvious, frequent, and routine use of the Roadway by Riddick and the Apartments and its tenants, Atwell represented to Riddick that they and the Apartments and its tenants had an easement to use the Roadway (the "Atwell Representation"); Riddick and the Apartments and its tenants relied upon this representation by, among other things, continuing to use the Roadway to access the Head-In Parking and by maintaining the Roadway.

37. Atwell sold Lot 7 to Yong Bok Yi and Wife, Wha Seon Yi, (together referred to as "Yi")) in 1992.

38. Yi did not halt or preclude the Apartments and its tenants from using the Roadway.

39. By Yi's conduct of permitting open and obvious, frequent, and routine use of the Roadway by Riddick and the Apartments and its tenants, Yi represented to Riddick that they and the Apartments and its tenants had an easement to use the Roadway (the "Yi

DOCUMENT SCANNED AS FILED

Representation"); Riddick and the Apartments and its tenants relied upon this representation by, among other things, continuing to use the Roadway to access the Head-In Parking and by maintaining the Roadway.

40. Robinson was a tenant of Lot 7 (before purchasing it) since 1991.

41. Since her tenancy in 1991, Robinson knew the Roadway was the only way to access the Apartments' Head-In Parking built adjacent to the Roadway.

42. Robinson learned from her Seller, Yi, that the Roadway had a commercial use and such use could not be changed.

43. Robinson observed when she was considering purchasing Lot 7 that the Roadway was being used by Riddick and the Apartments and its tenants.

44. On June 15, 1997, Robinson purchased Lot 7 (the Robinson Property) from Yi.

45. Robinson obtained a title commitment, but did not purchase title policy.

46. Robinson's title commitment excepted to parties in possession of any or all of Lot 7; at that time, Riddick was in possession of the Roadway, which is part of Lot 7.45. From the time she purchased Lot 7 until April 19, 2007, Robinson did not halt or preclude the Apartments and its tenants from using the Roadway.

47. By her conduct of permitting open and obvious, frequent, and routine use of the Roadway by Riddick and the Apartments and its tenants, Robinson represented to Riddick that Riddick and the Apartments and its tenants had an easement to use the Roadway (the "Robinson Representation #1"); Riddick and the Apartments and its tenants relied upon this representation by, among other things, continuing to use the Roadway to access the Head-In Parking and by maintaining the Roadway.

48. Relying on Robinson Representation #1, Riddick made improvements to the Head-In Parking and the attached storage spaces.

49. April 19, 2007 was the first time, Robinson claimed Riddick was trespassing by using the Roadway.

50. Riddick did not respond to the April 19, 2007, demand of trespass and did not change any of their or the Apartments' and its tenants' continuous, daily, and routine use of the Roadway.

51. Robinson even refused to maintain the Roadway and instead told Riddick to maintain it, stating Riddick and the Apartments and its tenants were the only users of the Roadway.

52. By acquiescing to Riddick's and the Apartments' and its tenants' continued open and obvious, frequent, and routine use of the Roadway, Robinson represented to Riddick that Riddick and the Apartments and its tenants had an easement to use the Roadway ("Robinson Representation #2"); Riddick and the Apartments and its tenants relied upon

DOCUMENT SCANNED AS FILED

this representation by, among other things, continuing to use the Roadway to access the Head-In Parking, placing the trash dumpster on part of the Roadway, and maintaining the Roadway.

53. Since their ownership in 1977, Riddick never sought express consent or permission from any of the Lot 7 property owners for any type of use of the Roadway.

54. On July 12, 2007, Robinson reiterated her claim of trespass.

55. Riddick did not respond to the July 12, 2007, demand of trespass and did not change any of their or the Apartments' and its tenants' continuous, daily, and routine use of the Roadway.

56. On October 16, 2007, in the context of Robinson's trespass demand, Robinson offered Riddick use of the Roadway at a cost of $1,000.00 per month.

57. Riddick did not respond to the October 16, 2007, demand of trespass or to the offer to pay for use of the Roadway and did not change any of their or the Apartments' and its tenants' continuous, daily, and routine use of the Roadway.

58. By continuing to acquiesce to Riddick's and the Apartments' and its tenants' continued, frequent, and routine use of the Roadway, Robinson represented to Riddick that Riddick and the Apartments and its tenants had an easement to use the Roadway ("Robinson Representation #3"); Riddick and the Apartments and its tenants relied upon this representation by, among other things, continuing to use the Roadway to access the Head-In Parking, placing the trash dumpster on part of the Roadway, and maintaining the Roadway.

59. Riddick both believed and relied on Robinson's repeated representations that Riddick and the Apartments and its tenants had the right to use and had an easement to the Roadway to invest in and continue to use the Roadway, including by improving and maintaining the Head-In Parking, constructing a pad for and placing the trash dumpster in part of the Roadway, improving and maintaining the Roadway, and using the Roadway for compliance with City Code requirements.

60. On December 6, 2012, under demand of trespass made by Robinson through her attorney, Robinson offered use of the Roadway at a cost of $3,500.00 per month.

61. Riddick did not respond to the demand of trespass or to the offer to pay for use of the Roadway and did not change any of their or the Apartments' and its tenants' continuous, daily, and routine use of the Roadway.

62. Riddick and their predecessor-in-interest used the Roadway in a manner that was open, notorious, continuous, exclusive and, assuming Riddick and the Apartments and its tenants did not have implicit permission to use the Roadway, adverse for a period of ten years or more.

DOCUMENT SCANNED AS FILED

63.   During the time Riddick and their predecessors-in-interest owned the Riddick Property, they each manifested independent acts demonstrating an adverse claim to a right to use the Roadway, assuming Riddick and the Apartments and its tenants did not have implicit permission to use the Roadway.

64.   Defendants retained the firm of Richie & Gueringer, P.C. (the "Law Firm") to prosecute their claims under the Declaratory Judgment Action, section 37.001 *et seq.* of the Texas Civil Practices and Remedies Code and to defend Robinson's claims and agreed to pay reasonable and attorney fees that the Court found to be equitable and just.

65.   Sixty Thousand and No/100 Dollars ($60,000.00) is the reasonable and necessary and equitable and just attorney fees for Riddick's prosecution of their Declaratory Judgment Action and/or in defense of Robinson's Declaratory Judgment Action.

66.   Reasonable and necessary and equitable and just attorney fees in the event of an appeal are as follows:

    a.   $30,000.00 for briefing the case in the event of an appeal to the Court of Appeals;

    b.   $15,000.00 for responding in the event of the filing of a Petition for Review in the Supreme Court of Texas;

    c.   $15,000.00 for drafting and filings briefs on the merits should the Supreme Court of Texas grant the Petition for Review; and

    d.   $15,000.00 for oral argument before the Supreme Court of the State of Texas.

67.   Robinson should not be awarded attorney fees.

## CONCLUSIONS OF LAW[2]

1.   The Court has jurisdiction over this matter.

2.   Venue is proper in Bexar County, Texas pursuant to Texas Civil Practice and Remedies Code Section 15.002, as it is the county where all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

3.   All conditions precedent to Defendants/Counter Plaintiffs' right of recovery have been performed or have occurred.

4.   Riddick did not establish an easement by necessity.

5.   Riddick did not establish an easement by prior use.

---

[2] To the extent the following statements are considered findings of fact, they are also incorporated in the section above entitled, Findings of Fact.

DOCUMENT SCANNED AS FILED

6.  Riddick established an easement by estoppel on and through Robinson's Property, which is coextensive with the Electrical Easement granted by Albert Steves, III, to the City Public Services Board, dated February 23, 1960, and recorded at Volume 4433, Page 263, Real Property Records of Bexar County, Texas as follows:

    ...parallel to and thirty feet (30') from the Southwest lot line of Lot 7, Block 13, NCB 9142, Bel Meade Addition, City of San Antonio, County of Bexar, according to the plat thereof recorded in Vol. 5870, Page 205, Deed and Plat Records of Bexar County, Texas beginning at the Burr Road and extending Southeasterly two hundred and fifty five feet (SE-255'); thence Southwesterly approximately thirty feet (SW-30') to the Southwest lot line.

7.  In the alternative, Riddick established an easement by prescription on and through Robinson's Property, which is coextensive with the Electrical Easement granted by Albert Steves, III, to the City Public Services Board, dated February 23, 1960, and recorded at Volume 4433, Page 263, Real Property Records of Bexar County, Texas as more fully described as follows:

    ...parallel to and thirty feet (30') from the Southwest lot line of Lot 7, Block 13, NCB 9142, Bel Meade Addition, City of San Antonio, County of Bexar, according to the plat thereof recorded in Vol. 5870, Page 205, Deed and Plat Records of Bexar County, Texas beginning at the Burr Road and extending Southeasterly two hundred and fifty five feet (SE-255'); thence Southwesterly approximately thirty feet (SW-30') to the Southwest lot line.

8.  The easement runs with the land.

9.  Riddick is entitled to recover reasonable and necessary attorney fees that are equitable and just.

10. Robinson is not entitled to any recover attorney fees.

11. A reasonable fee for the necessary services of Riddick's attorney that is equitable and just, stated in dollars and cents, is Sixty Thousand and No/100 Dollars ($60,000.00).

12. Reasonable and necessary and equitable and just attorney fees to Riddick in the event of an appeal are as follows:

    a.  $30,000.00 for briefing the case in the event of an appeal to the Court of Appeals;

    b.  $15,000.00 for responding in the event of the filing of a Petition for Review in the Supreme Court of Texas;

    c.  $15,000.00 for drafting and filings briefs on the merits should the Supreme Court of Texas grant the Petition for Review; and

DOCUMENT SCANNED AS FILED

d.  $15,000.00 for oral argument before the Supreme Court of the State of Texas.

13.    All court costs shall be taxed against Robinson.

SIGNED this 13th day of March 2015.


_____

JUDGE RENÉE A. YANTA

DOCUMENT SCANNED AS FILED